IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD MICHAEL OUTLAW, | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, | : | |
| JEFFREY PIREE and HOWARD | : | |
| PETERMAN, in their individual capacities, | : | |
| *Defendants*. | : | NO. 21-1290 |

**MEMORANDUM**

**KENNEY, J.**                                                                   **August 6, 2021**

Donald Outlaw served nearly sixteen years in prison after he was wrongfully convicted of Jamal Kelly's September 2000 murder. He brings this action against the City of Philadelphia, and two individuals, the Philadelphia Police Department detectives who investigated Jamal Kelly's murder, under 42 U.S.C. § 1983 and Pennsylvania law. Mr. Outlaw alleges Defendants acted in concert to fabricate evidence, coerce witnesses to provide false statements, withhold exculpatory evidence, and other misconduct, leading to his 2004 conviction. Mr. Outlaw maintained his innocence through a lengthy appeals process and subsequent investigation. In January 2019, after the prosecution turned over the Philadelphia Police Department Homicide Unit's case file, which contained previously withheld exculpatory information, Mr. Outlaw's conviction was vacated. After sixteen years in prison, Mr. Outlaw was exonerated.

In his six-count complaint, Mr. Outlaw seeks recompense for, *inter alia*, his 25-year loss of freedom, loss of his youth, pain and suffering, deprivation of his familial relationships, and other injuries and damages. Defendants now ask us to partially dismiss Mr. Outlaw's complaint, permitting his remaining claims to proceed to discovery. Defendants argue they are entitled to qualified immunity from liability and that Mr. Outlaw's *Monell* omnibus claim fails to the extent

it relies on violations of rights we determine were not "clearly established" during the relevant period.

## I.  BACKGROUND[1]

Jamal Kelly was shot on September 4, 2000. Compl., ECF No. 1, ¶ 15.  Defendants Jeffrey Piree ("Piree") and Howard Peterman ("Peterman") (collectively "the Detective Defendants") were the Homicide Unit detectives assigned to investigate the murder. When the Detective Defendants began their investigation on September 4, 2000, an individual told them that Jamal Kelly said "Shank did it" before he died. *Id.* ¶¶ 12,13, 15. Piree and Peterman understood "Shank" to refer to Derick ("Shank") Alston, Kelly's drug supplier with whom he had a violent dispute before his death. *Id.* ¶¶ 15, 28. A witness told the Detective Defendants that she saw Kelly and Alston arguing the day of Kelly's shooting and again moments before gunshots were fired. *Id.* ¶ 16. Another witness told the Detective Defendants that Plaintiff Donald Outlaw ("Outlaw") did not commit Jamal Kelly's murder. *Id.* ¶ 28.

Piree and Peterman questioned Derick Alston, who told them he did not know the shooter's identity and that he had been with Charles Paladino at the time of the murder. *Id.* ¶¶ 17–18. The detectives then questioned Paladino, who told them he did not know the identity of Jamal Kelly's shooter either. *Id.* ¶ 18.

When Piree again questioned Paladino in 2001, Paladino gave a different account; he told Piree he had seen Outlaw in front of his house the night of the murder and that another man, Llamar Rodgers, told him Outlaw was Kelly's killer. *Id.* ¶ 19. A few months later, the Detective

---

[1] We "accept as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and construe[] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). We draw the following facts from the Complaint. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

Defendants questioned Paladino again, who for the first time, claimed he saw Outlaw threaten Kelly before the shooting. *Id.* ¶ 20. The next time the Detective Defendants questioned Paladino, he claimed that Outlaw intimidated him to dissuade him from testifying. *Id.* ¶ 21.

On September 4, 2003, Outlaw was arrested for Jamal Kelly's murder. *Id.* at ¶ 22. At Outlaw's preliminary hearing, Paladino denied that he was offered leniency in exchange for testimony against Outlaw. *Id.* ¶ 22–23. The trial went forward based on Paladino's testimony. *Id.* ¶ 23.

At trial, several witnesses recanted previous statements implicating Outlaw. *Id.* ¶ 25. "Shank" Alston testified that he never implicated Outlaw and told the jury that he signed a false statement so the police would stop taking him into custody. *Id.* Llamar Rodgers testified that he never told police that he overheard Outlaw make any incriminating statements about Kelly's shooting. *Id.* He also testified that he signed his statement without reading it after an eight-hour interrogation. *Id.* Paladino testified that the detectives physically coerced him to fabricate his allegations against Outlaw. *Id.* Another witness, Eric Lee, testified that previous statements identifying Outlaw as the shooter were false, and that he told prosecutors the statement the detectives took from him was false. *Id.* All four witnesses' recanted statements were read to the jury, and Outlaw was convicted of first-degree murder and other offenses. *Id.* He was sentenced to life in prison without parole. *Id.* ¶ 26.

A lengthy appellate process and investigation ensued. *Id.* ¶ 27. In May 2018, the prosecution turned over the Homicide Unit's file, which contained previously withheld exculpatory information. *Id.* ¶ 28. Specifically, the file contained the Detective Defendants' contemporaneous handwritten notes indicating that a man named Jerome Grant had confessed to Jamal Kelly's murder. *Id.* The notes also exposed that the detectives knew "Shank" Alston had

previously sold Kelly illegal drugs. *Id.* Finally, the handwritten notes demonstrated that Piree and Peterman knew that "Shank" Alston was the likely owner of a gold Honda Accord seen driving away from the murder scene. *Id.*

The Homicide Unit's Kelly file contained further evidence undermining Outlaw's guilt. It contained a letter Paladino wrote to Peterman revealing that Paladino received a reward for implicating Outlaw and expected to be released from custody. *Id.* In his letter, Paladino promised he would not testify that he was provided any type of reward or incentive to implicate Outlaw. *Id.*

On appeal, Paladino testified that the detectives physically coerced him into implicating Outlaw and promised leniency in his own case for testimony against Outlaw. *Id.* ¶ 29. Peterman instructed Paladino to lie about parts of his statement, threatened that he would be charged with murder, and physically assaulted him to obtain his statements against Outlaw. *Id.*

On January 29, 2019, based on the revelations that favorable material evidence was withheld in violation of Outlaw's constitutional rights, the Honorable Diana Anhalt vacated his conviction. *Id.* ¶ 29. The Philadelphia District Attorney's Office Conviction Integrity Unit then reviewed the case and Outlaw's claims of innocence, and recommended the court enter a nolle prosequi. On December 29, 2020, Outlaw was exonerated. *Id.* ¶¶ 32–33.

On March 17, 2021, Outlaw filed his complaint. *See* ECF No. 1. He alleges he was convicted of Kelly's murder because of Defendants' unconstitutional conduct, which included fabricating evidence, coercing witnesses to provide false statements, withholding exculpatory evidence, and other misconduct. *Id.* ¶ 34. Outlaw further alleges the Philadelphia Police Department ("PPD") had a pervasive pattern, practice and custom of committing unconstitutional misconduct in homicide investigations, dating back to the 1970s, which resulted in the wrongful convictions of over ten other individuals. *Id.* ¶¶ 36, 46 (listing 13 convictions later resulting in

exonerations). Piree's misconduct alone resulted in three later exonerations. *Id.* ¶ 45. Finally, Outlaw alleges the City of Philadelphia was deliberately indifferent to the PPD's pattern, practice and custom of violating the constitutional rights of criminal suspects and others. *Id*. ¶ 49.

Outlaw brings a six-count complaint against Defendants asserting the following claims: malicious prosecution in violation of the Fourth and Fourteenth Amendments (Count I); due process violations (Count II); civil rights conspiracy (Count III); failure to intervene (Count IV); an omnibus *Monell* claim (Count V); and malicious prosecution under Pennsylvania law (Count VI). Defendants move to dismiss Counts I, II, and IV based on the detectives' qualified immunity, and Count V, Outlaw's *Monell* claim.[2] *See* Def. Br., ECF No. 9. Outlaw filed a response brief on June 7, 2021, and Defendants filed a reply on June 14, 2021.

## II.      JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this matter under 28 U.S.C. § 1331.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

---

[2] Defendants challenge Count I to the extent it alleges a violation of the Fourteenth Amendment but concede the viability of Count I under the Fourth Amendment. Defendants do not challenge Count II's fabrication of evidence claim, nor do they challenge Count III, which asserts a civil conspiracy claim, or Count VI, which asserts a malicious prosecution claim under Pennsylvania law. Defendants challenge Count V to the extent it relies on claims otherwise dismissed. As Defendants' Motion does not challenge Count III or Count VI, we will not address either claim. Counts III and VI proceed to discovery.

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) we "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;' " (2) we "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;' " and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting Iqbal, 556 U.S. at 675).

We are to permit "a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

## III.     DISCUSSION

Defendants move to partially dismiss Outlaw's complaint. Defendants seek dismissal of Count I—in part—arguing that our Court of Appeals has not yet clarified whether a malicious prosecution claim may be grounded in the Fourteenth Amendment. They seek dismissal of Count II, to the extent it alleges withholding of evidence and inadequate investigation due process claims, and dismissal of Count IV, Outlaw's failure to intervene claim asserting that they are entitled to qualified immunity. Finally, Defendants ask us to dismiss Outlaw's omnibus *Monell* claim, to the extent the City's liability is predicated on claims we otherwise dismiss.

The judge-created defense of qualified immunity shields officers from suit for monetary damages under § 1983 unless "the official violated a ... constitutional right," and "the right was clearly established at the time of the challenged conduct." *Weimer v. County. of Fayette*, *Pennsylvania*, 972 F.3d 177, 190 (3d Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *see also Jamison v. McClendon*, 476 F. Supp. 3d 386, 392 (S.D. Miss. 2020) ("Qualified immunity has served as a shield for [ ] officers, protecting them from accountability."). As the

defense provides "immunity from suit rather than a mere defense to liability," we must resolve whether the defendant is entitled to qualified immunity "at the earliest possible stage of the litigation." *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (quoting *Miller v. Clinton County*, 544 F.3d 542, 547 (3d Cir. 2008). "[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Martin-McFarlane v. City of Phila.*, 299 F. Supp. 3d 658, 668 (E.D. Pa. 2017) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006). The defendant bears the burden of establishing its entitlement to qualified immunity. *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011).

We resolve claims of qualified immunity using a two-step sequence: first, we must determine whether the facts "make out a violation of a constitutional right;" second, we must decide whether this right was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). We may begin with either prong. *Id.* at 236. A right is clearly established when it is so evident that "every reasonable official would understand that what he is doing is unlawful." *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 190 (3d Cir. 2021) (citations omitted). Qualified immunity shields officers from responsibility for having such an understanding unless existing precedent has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).[3] The Supreme Court requires us to define the clearly established right with a "high degree of specificity." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (citation omitted). "The legal principle established in a precedential case must 'clearly prohibit the offic[ial's] conduct in the particular circumstances before him.'" *HIRA Educ. Servs. N. Am.*, 991 F.3d 190–191 (quoting *Wesby*, 138 S. Ct 577, 581).

---

[3] Whether binding Court of Appeals precedents constitute "clearly established" law has not yet been confirmed by the Supreme Court. *See City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam) ("Assuming without deciding that a court of appeals decision may constitute clearly established law for purposes of qualified immunity…")

Outlaw concedes his Fourteenth Amendment malicious prosecution claim may not proceed under current law and that he therefore cannot overcome Defendants' qualified immunity defense. *See* ECF No. 11 at 3 n.1. Accordingly, we will dismiss Count I to the extent Outlaw asserts Count I under the Fourteenth Amendment because we agree that the right is not clearly established. *See Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 382 (E.D. Pa. 2018) (finding that whether a procedural due process right against malicious prosecution exists remains "an unsettled question."). We will discuss the remaining challenges to Counts II, IV, and V individually.

**A. Withholding of evidence and inadequate investigation (Count II)**

Count II alleges due process violations arising out of "fabricating evidence, withholding material exculpatory and impeachment evidence, and deliberately failing to conduct a constitutionally adequate investigation." Compl. ¶¶ 64–69. Defendants argue that Count II asserts several claims that are each subject to "proof of different elements." Def. Br., ECF No. 9 at 5. Defendants challenge the withholding of evidence and failing to conduct a constitutionally adequate investigation components of Count II, arguing they are entitled to qualified immunity and dismissal of the claims because neither right was clearly established between 2000 and 2004. *Id.* Defendants correctly declined to seek dismissal of Outlaw's fabrication of evidence claim based on a qualified immunity defense. *See Halsey v. Pfeiffer*, 750 F.3d 273, 293 (3d. Cir. 2014) (internal quotation omitted) ("We emphatically reject the notion that due process of law permits the police to frame suspects. Indeed, we think it self-evident that a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process."). We will address whether Count II's withholding of evidence and inadequate investigation claims survive Defendants' Motion to Dismiss in turn.

       *i.*    *Withholding of material exculpatory and impeachment evidence*

Outlaw argues the Detective Defendants violated his rights by withholding material exculpatory and impeachment evidence. Compl. ¶ 65. Defendants argue Outlaw's asserted right was not clearly established during the relevant period, and that we must dismiss this theory. If the Detective Defendants' obligation to turn over "information regarding the true circumstances of Jamal Kelly's murder…information regarding other viable suspects, [and] other exculpatory statements" was not "clearly established" between 2000 and 2004, Defendants are entitled to qualified immunity on Outlaw's withholding of evidence theory.

Prosecutors' obligation to turn over favorable evidence to an accused has been clearly established since the Supreme Court 1963 decision in *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady,* the Supreme Court held that the prosecution's failure to provide the accused with exculpatory evidence upon request "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. Prosecutors' obligation to disclose information to the accused extends to information possessed by the police investigators working on the case. *Kyles v. Whitley*, 514 U.S. 419, 421–22 (1995).

Outlaw argues here that *Brady*'s mandates applied to the Defendant Detectives at the time of his investigation and prosecution. Pl. Br., ECF No. 11 at 11–16. Other Courts of Appeals recognized that police officers could be liable under § 1983 for failing to turn over favorable evidence to the prosecutor during the relevant period. *See McMillian v. Johnson*, 88 F.3d 1554, 1567 (11th Cir.1996)*, amended* 101 F.3d 1363 (11th Cir.1996); *Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir.1992); *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir.1988)*.* "Even in 2000, [our] Court [of Appeals] was only able to *assume* that police officers 'have an affirmative duty to disclose exculpatory evidence to an accused…'" *Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427, 444 (3d Cir. 2005) (quoting *Smith v. Holtz*,

210 F.3d 186, 197 n. 14 (3d Cir.2000)) (emphasis in original). Not until 2005—the year after Outlaw's conviction—did our Court of Appeals conclude that a § 1983 claim could be asserted against police officers under *Brady*. *See Gibson*, 411 F.3d at 443. Assuming our Court of Appeals' decision in *Gibson* is clearly established law, *see City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019), we are obligated to follow precedent and find that Defendants are entitled to qualified immunity because Outlaw's asserted right was not clearly established at the time of his investigation and prosecution.

Outlaw urges us to disregard the cases Defendants cite where our sister courts apply *Gibson* in finding that a right to the disclosure of exculpatory evidence was not clearly established until 2005. *See* ECF No. 11 at 15 (citing *Gilyard v. Dusak*, No. 16-cv-2986, 2018 WL 2144183, *4–5 (E.D. Pa. May 8, 2018) (Kearney, J.); and *Lewis v. City of Philadelphia*, No. 19-cv-2847, 2020 WL 1683451, *8-10 (E.D. Pa. Apr. 6, 2020) (Baylson, J.). First, Outlaw argues, our sister courts' "conclusions about the precise year in which this Circuit established an extension of *Brady* obligations to police officers is merely dicta and factually distinguishable from this instant case." *Id.* Second, Outlaw argues that our sister courts gave "improper weight" to *Gibson*'s citation to the footnote in *Smith v. Holtz*, 210 F.3d at 197 n. 14 (emphasis added) ("assum[ing] for the purposes of *this* appeal" that *Brady* obligations extended to investigating police officers). *Id.*

Although our sister courts' decisions are not binding on us, we are persuaded by their analyses. *See Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011) (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1] [d], p. 134–26 (3d ed.2011)) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). That the alleged rights violations in *Gilyard* and *Lewis* occurred from 1997 to 1998 and in 1997, respectively, does not make those cases

"factually distinguishable." The proximity in time of the violations to precedent that places "the statutory or constitutional question beyond debate" has no bearing on whether a right is clearly established. *See Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017) ("To determine whether the right is clearly established, we look at the state of the law when the [investigation] occurred."). Defendant Detectives' evidence withholding was not a "constitutional question beyond debate," between 2000 and 2004, just as it was not "beyond debate" in 1997 or 1998.

Finally, we disagree with Outlaw's argument that our sister courts gave improper weight to *Gibson*'s citation of the *Smith v. Holtz* footnote. In *Smith*, decided in 2000, our Court of Appeals declined to recognize that police officers may be liable under § 1983 for withholding exculpatory information when presented with the opportunity. *See Gibson*, 411 F.3d at 444. It instead opted to "assume for the purposes of this appeal" that such a right existed. *Smith v. Holtz*, 210 F.3d at 197 n. 14. We are required to "apply the law as stated by the Supreme Court," *Jamison*, 476 F. Supp. 3d at 392, and it directs us to identify the clearly established law at the time of Outlaw's investigation and prosecution. We do not think the Court of Appeals' assumption—which it expressly limited to the case before it—created clearly established law as the Supreme Court or our Court of Appeals define "clearly established." Defendants are thus entitled to qualified immunity on Outlaw's claim that they withheld exculpatory evidence.

    *ii.    Inadequate investigation*

Outlaw's Count II also asserts that the Detective Defendants violated his rights by failing to conduct a constitutionally adequate investigation. Compl. ¶ 67. Defendants urge us to dismiss this claim because no cause of action arising out of an inadequate police investigation exists. *See* ECF No. 9 at 11.

"There is 'no constitutional right to a police investigation.'" *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 386 (E.D. Pa. 2018) (quoting *Whitehead v. City of Phila.*, No. 13-2167, 2014 WL 657486, at *2 (E.D. Pa. Feb. 19, 2014)). In his response, Outlaw acknowledges that the law consists of "musings about the existence of such a right." ECF No. 11 at 16. Thus, even if such a right exists, the murkiness of the law makes clear that the right is not clearly established today, nor was it clearly established between 2000 and 2004. Accordingly, we find that Defendants are entitled to qualified immunity on this claim. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

As Judge Pratter observed in *Thomas*, even without this "failure to investigate" component to Count II, the Defendant Detectives' alleged conduct remains at issue in Outlaw's other claims. *See Thomas*, 290 F. Supp. 3d at 386. For example, the investigation-related allegations are captured in Outlaw's malicious prosecution claim (Count I) which asserts the Detective Defendants prosecuted Outlaw knowing full well no probable cause existed.

## B.  Failure to Intervene (Count IV)

Outlaw's Count IV Plaintiff asserts a failure to intervene claim, alleging that Defendants declined to intervene "to prevent [Outlaw's] false arrest, malicious prosecution, false imprisonment and deprivation of liberty…" Compl. ¶ 75. Defendants argue failure to intervene cases arise almost exclusively in excessive force cases, and that no failure to intervene cause of action exists in the context in which Outlaw asserts it. Thus, Defendants argue, they are entitled to qualified immunity and we should dismiss Count IV. We agree.

Relying on *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002), Outlaw argues that *Smith* supports the proposition that a "fail[ure] or refus[al] to intervene when a constitutional violation *such as* an unprovoked beating takes place in his presence" is only one example of a constitutional

violation for which a police officer can be liable under § 1983. *See* ECF No. 11 at 18 (quoting *Smith*, 293 F.3d at 350) (emphasis added by Plaintiff). Outlaw argues that *Smith*, and the Eleventh, Eighth, and Seventh Circuit cases that *Smith* cites, support imposing a responsibility on the Detective Defendants to have understood that failing to intervene in Outlaw's false arrest, malicious prosecution, false imprisonment and deprivation of liberty was a violation of his constitutional rights. *See HIRA Educ. Servs. N. Am.*, 991 F.3d at 190. However, our sister court recently rejected a similar argument, explaining that this argument invites courts to define clearly established law "'at a high level of generality,' which the Supreme Court has longed instructed courts not to do." *Thorpe v. City of Phila.*, No. CV 19-5094, 2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020) (quoting *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018)).

We will decline Outlaw's invitation to take impermissible liberties in defining the asserted right.  As neither our independent research nor Outlaw's briefing identified any cases from our Court of Appeals finding that fabrication, withholding of evidence, and failing to conduct a "constitutionally sound investigation" would establish a duty to intervene, we find that Defendants are entitled to qualified immunity on Count IV and will dismiss the claim.

### C.  Omnibus *Monell* Claim(Count V)

In Count V, Outlaw asserts a *Monell* claim, seeking to hold the Defendant City of Philadelphia liable for its "policy, practice or custom of unconstitutional misconduct in homicide and other criminal investigations" Compl. ¶ 79. Defendants argue that Outlaw cannot sustain a municipal liability claim for any alleged violations of rights not clearly established. Defendants thus seek dismissal of Count V to the extent the *Monell* claim is predicated on Count I's Fourteenth Amendment malicious prosecution claim, Count II's withholding of evidence and inadequate investigation claims, and Count IV's failure to intervene claim. As we discussed, Defendants are

entitled to qualified immunity on each, and we agree with Defendants that the City of Philadelphia cannot be liable for rights not clearly established.

For the City of Philadelphia to be liable under § 1983, Outlaw must identify "must "identify a municipal policy or custom that amounts to deliberate indifference to the rights of people with whom the police come into contact." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted). While our Court of Appeals has not addressed the issue, our sister courts, relying on other Court of Appeals decisions, have held municipalities cannot be deliberately indifferent to rights that are not clearly established. *See Lewis v. City of Philadelphia*, No. CV 19-2847, 2020 WL 1683451, at *12 (E.D. Pa. Apr. 6, 2020) (collecting Court of Appeals decisions holding that a municipality cannot be liable for rights not clearly established); *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 435 (E.D. Pa. 2019); *Thomas*, 290 F.Supp.3d at 387.

We join our sister courts in holding that a right that is not clearly established cannot support municipal liability. Accordingly, the City of Philadelphia will not be liable for Outlaw's claims for Fourteenth Amendment malicious prosecution; withholding of material exculpatory evidence; conducting a constitutionally inadequate investigation; or his failure to intervene claim. Outlaw's Fourth Amendment malicious prosecution and his fabrication of evidence claims may proceed against the City of Philadelphia and he may obtain discovery on these claims.

## IV. CONCLUSION

For the foregoing reasons, we will grant Defendants' Partial Motion to Dismiss. We will dismiss Count I to the extent it relies on the Fourteenth Amendment, and Count II to the extent it

relies on a withholding of evidence and failure to conduct a constitutionally adequate investigation theories. We will dismiss Count IV's failure to intervene claim, and will dismiss Count V to the extent it relies on alleged violations of rights not clearly established at the time of Outlaw's investigation and prosecution. We will dismiss these claims without prejudice, permitting Outlaw to reassert these claims should there be a change in the law on qualified immunity.


/s/ Chad F. Kenney
_____
CHAD F. KENNEY, JUDGE