**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD MICHAEL OUTLAW** | : | |
| | : | |
| v. | : | NO. 21-1290 |
| | : | |
| **CITY OF PHILADELPHIA, JEFFREY** | : | |
| **PIREE and HOWARD PETERMAN** | : | |

**PLAINTIFF'S RESPONSE IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION
FOR EXTENSION OF TIME TO SERVE REBUTTAL EXPERT REPORTS AND
FOR AN EXTENSION OF THE DEADLINE TO FILE *DAUBERT* AND
SUMMARY JUDGMENT MOTIONS**

Plaintiff, Donald Outlaw, by and through his counsel, VSCP LAW, respectfully submits the

following Response in Partial Opposition to Defendants' Motion for Extension of Time to Serve

Rebuttal Expert Reports and for an Extension of the Deadline to File *Daubert* and Summary

Judgment Motions, filed on September 20, 2022 (ECF Doc. 144).

I.    **INTRODUCTION**

Defendants' Motion for Extension of Time (ECF Doc. 144) asks this Court to specifically

extend deadlines as follows:

- To extend the rebuttal expert report deadline from September 27, 2022, to October
  11, 2022.
- To extend the expert discovery deadline from October 11, 2022, to October 25, 2022.
- To extend the motions for summary judgment and *Daubert* from November 1, 2022
  to November 15, 2022.

At the outset, Plaintiff is not opposed to the extension of these specific deadlines, *only*.

Plaintiff *is* opposed to such modification to the standing Scheduling Order if it has the effect of also

extending all other remaining deadlines and trial date of February 6, 2023, and if such extension is

premised upon inaccurate, moot and/or unrelated information. For that reason, Plaintiff submits this Partial Response in Opposition.

Plaintiff did not join in Defendants' Motion for two reasons: 1) Defendants did not agree to preserve all other deadlines including the trial deadline in this case,[1] and 2) Defendants lack good cause for the requested extension. Plaintiff has made every effort to comply with Defendants' last-minute urgencies as Defendants apparently scrambled to conduct all desired depositions within the last few weeks and days of the allotted discovery period, and to obtain all desired evidence prior to the initial expert report disclosure deadline. Despite these efforts, Defendants still attempt to blame Plaintiff and others for their plain failure to prepare for rebuttal and expert discovery in this significant civil rights case. Rather than focus on defending against Plaintiff's mounting evidence against Defendants in support of his claims, Defendants appear to be distracted with the pursuit of hollow affirmative defenses regarding Plaintiff's character, the conduct of the CIU (not the underlying prosecution), and now also apparently authenticity of documents in what seems to be a suggestion that Mr. Outlaw orchestrated a massive fraud upon the judge who exonerated him and the CIU who agreed to *nolle prose* him, by intimidating witnesses into lying for him dating all the way back to his trial in 2004. Even if Mr. Outlaw was capable of such a scheme, which he is not, it would have no bearing on his actual innocence, which is the only affirmative defense Defendant may pursue.

---

[1]  Plaintiff's counsel explained to counsel for Defendants in a phone call that Plaintiff could not agree to join in any Motion that did not specifically agree to preserve the standing trial date of February 6, 2023, and further informed Defendants that, depending upon the stated basis for an extension presented to the Court in Defendants' Motion, Plaintiff would decide whether and to what extent a response was required.

Now faced with the multiple expert reports in support of Plaintiff's claims, Defendants file a Motion for Extension[2] which is unfortunately fraught with distracting complaints that are either inaccurate, moot, or unrelated to the deadlines at issue all of which Plaintiff will address in turn.

## II.    **BRIEF FACTUAL BACKGROUND**

Plaintiff produced eight (8) expert reports at approximately 4:30 p.m. on September 13, 2022. Defendants produced one (1) expert report at 11:47 p.m. on September 13, 2022, and a second report at approximately 5:30 p.m. on September 14, 2022[3].

Plaintiff's expert production consisted of the following:

- Christopher Chapman, Ph.D.
    - Liability Expert, Report length = 230 pages (not including CV).
- Darrin K. Porcher, Ed.D.
    - Liability Expert, Report length = 48 pages (not including CV).
- Michael Mosiniak
    - Liability Expert, Report length = 30 pages (not including CV).
- Wayne K. Ross, M.D., P.C.
    - Forensic Medical Examiner (Liability), Report length = 14 pages (not including CV).
- Alexandra B. Whittle, Esq.
    - Sentencing and Parole Expert (Damages), Report length = 27 pages (not including CV).
- Susan E. Rushing, M.D., JD
    - Psychological Expert (Damages), Report length = 13 pages (not including CV).
- Romy Tota, Ed.D.
    - Vocational Expert (Damages), Report length = 19 pages (not including CV).
- Royal A. Bunin, M.B.A.
    - Economic Expert (Damages), Report length = 14 pages (not including CV).

On September 13, 2022, Plaintiff also identified two non-retained experts, both of whom have been deposed in this case: Patricia Cummings, Esq. former Chief of the Philadelphia

---

[2] It should also be noted that Defendants waited for seven (7) days of the fourteen (14) day window for rebuttal reports before filing this motion for extension which suggests either a lack of true necessity or further lack of preparation by Defendants.

[3] Plaintiff agreed to accommodate Defendants' request for a one (1) day extension for the production of this expert's report.

Conviction Integrity Unit of the District Attorney's Office, and the movant in the DAO's *Nolle Pros*, deposed in January, 2022; and Marvin Toliver, MWS, LCSW, treating therapist of Mr. Outlaw, deposed in June, 2022.

Defendants produced the following retained expert witnesses:

- Robert Milan, Esq.
    - Career Prosecutor (Cook Co.) retained "to review and evaluate the Philadelphia State's Attorney's CIU reinvestigation of the Outlaw case" but not to "opine on Outlaw's guilt or innocence", Report length, 189 pages (not including CV).
- Erich J. Speckin
    - Forensic Document Analyst and Ink Dating Specialist, Report length = 10 pages (not including CV).

On September 15, 2022, at approximately 7:40 a.m. a mere fourteen (14) hours after receiving expert Speckin's report, the undersigned counsel for Plaintiff requested from Defendants the production of "Mr. Speckin's raw data including TLC plates, as well as data from the GC/MS results" described in his report and in accordance with required disclosures under F.R.C.P. 26(a)(2)(B)(ii). Plaintiff made this request for purposes of preparing a rebuttal report. After some debate between counsel, and the scheduling constraints of Mr. Speckin, this material was not actually produced to Plaintiff until the evening of September 22, 2022, less than one (1) week from the deadline to produce rebuttal reports. Nevertheless, Plaintiff intends to meet the currently-standing deadlines regarding rebuttal reports.

The following expert discovery has been scheduled:
- Defense Medical Exam of Plaintiff confirmed for Friday, September 23, 2022[4].
- Deposition of Plaintiff's Expert, Michael Mosiniak confirmed for Thursday, September 22, 2022.
- Deposition of Plaintiff's Expert, Darin Porcher, Ed.D., confirmed for Friday, September 23, 2022.
- Deposition of Plaintiff's Expert, Christopher Chapman, Ph.D., - Defendants confirmed they do not intend to take his deposition.

---

[4] Any reference to Plaintiff's refusal to comply with this should be disregarded as moot (and is further clarified within this Response)

- Deposition of Plaintiff's Expert, Wayne Ross, M.D., requested on September 20, 2022, not yet confirmed. No other requests for depositions of Plaintiff's retained experts remain outstanding.
- Deposition of Plaintiff's identified by non-retained Expert, Patricia Cummings, Esq., was requested on September 14, 2022, by Defendants directly to the CIU and Plaintiff is unaware of any further correspondence between Defendants and the CIU on this topic.
- Deposition of Defendants' Expert, Erich Speckin, confirmed for Friday, September 30, 2022.
- Deposition of Defendants' Expert, Robert Milan, confirmed for Thursday, October 6, 2022.

## III.   RESPONSE TO DEFENDANTS' ARGUMENT FOR EXTENSION

Defendants request for an extension of the expert deadlines is nothing more than a request to accommodate Defendants' failure to adequately prepare for expert discovery. The stated bases provided in Defendants' Motion are distractions from this reality. Plaintiff submits this Response to identify issues that are 1) unrelated to expert disclosures or *Daubert* motions; 2) issues that are moot because they have been rectified; and 3) issues that are irrelevant or affect both parties equally, which do not constitute evidence of good cause; and to offer clarification to the extent that Defendants' Motion contains inaccuracies.

### A.   Defendants lack good cause for the extension of deadlines

#### 1)   The following issues are unrelated to expert disclosures or *Daubert* motions and therefore not indicative of good cause for an extension of expert disclosures or *Daubert* motions deadlines.

Defendants list six (6) reasons in paragraph 7 of their Motion's "facts" section for their stated expectation that "Plaintiff's designation of ten expert witnesses [will] be the subject of significant motions practice at the *Daubert* and/or Motion *in Limine* stages." See ECF Doc 144 at p. 6, ¶7.  First, anything related to Motions *in Limine* should have no bearing on the consideration of extending expert discovery deadlines. Motions *in Limine* are currently due by 12:00 p.m. on January 17, 2023. Defendants have provided no good cause for the extension of that deadline.

Indeed, most of the six (6) enumerated reasons for "significant motions practice" and the implication that such reasons also give rise to good cause for extending expert discovery, are all related to evidentiary rulings at the Motions *in Limine* stage. Taken in turn:

**Defendants' Stated Reason No. 1: experts' reliance on extra-record and undisclosed materials.**

Defendants claim that Plaintiff's experts rely on "undisclosed materials." All materials relied upon by Plaintiff's experts have been disclosed with the exception of professional resources consulted by the experts in the normal course of their practice in their field. Any material containing *facts* relied upon by Plaintiff's experts have been disclosed. Plaintiff has explained this in a detailed letter to Defendants, which is attached hereto as **Exhibit A** and incorporated as if fully set forth herein. Not only have all materials been disclosed, but all requests for clarification, made by Defendants to Plaintiff, have been answered.

Further, although Defendants fail to identify in their Motion, which of Plaintiff's experts are included in the "multiple reports" which include such "undisclosed" information. Plaintiff believes that this allegation is related to Dr. Chapman, a liability expert for Plaintiff who produced a report with live hyperlinks to websites with additional information regarding the PPD's history of unconstitutional practices within the ranks of the homicide division. This material includes videos of news reports regarding the criminal investigation of Detective Pitts, or links to *Inquirer* articles chronicling the reports of continuing use of false statements and coercion by PPD detectives, for example. Dr. Chapman, as many experts do, conducted his own research and disclosed that material with his report. Any material hyperlinked in Dr. Chapmans' report that was not previously disclosed was not in the possession of Plaintiff prior to the production of the report. More importantly, this hyperlinked information regarding additional cases of officer misconduct,

generally speaking, *has* been disclosed in discovery.[5] Further, by virtue of the active hyperlinks, the material *has been disclosed* to Defendants. It is unclear what other material Defendants refer to in making this statement, but to the extent that any material was not disclosed prior to the production of this expert report, Defendants may seek remedies through Motions *in Limine,* which are not due until January 17, 2023.

> **Defendants' Stated Reason No. 2: experts' inclusion of opinions on questions of law and ultimate issues reserved for the jury.**

This is an evidentiary issue to be addressed through Motions *in Limine,* which are not due until January 17, 2023.

> **Defendants' Stated Reason No. 3: experts' failures to disclose the materials relied upon and the basis for their opinions in their disclosed reports.**

This issue has been rectified[6] as Plaintiff has clarified that Plaintiff's experts have disclosed the materials relied upon. See Response to deficiency letter, **Exhibit A.** Plaintiff is unsure what Defendants mean by the phrase "and the basis for their opinions in their disclosed reports" but, to the extent that it suggests Plaintiff's experts have failed to provide or disclose the basis of their opinion, which is untrue, it would be the proper subject of a Motion *in Limine,* which are not due until January 17, 2023, if it were true.

---

[5] Plaintiff has identified these prior cases against the PPD both in discovery disclosures as well as specific discovery responses and also produced copies of this material, which is not only publicly available, but involves the Defendants such that they should have knowledge of this information. See for example, the bates-numbered production of documents listed as reviewed in Appendix "A" of Dr. Chapmans' Report, attached hereto as **Exhibit B.**

[6] See also, **Exhibit F** sent to Plaintiff's counsel at approximately 2:00 a.m. this morning with a request by Defendants that it be attached as an exhibit to this instant filing.

**Defendants' Stated Reason No. 4: experts' reliance on incomplete and inaccurate employment and earnings information and data.**

This, if true,[7] would be the subject of a Motion *in Limine*, which are not due until January 17, 2023.

**Defendants' Stated Reason No. 5: experts' opinions specifically directed towards legal claims dismissed by this Court, such as Defendants' failure to intervene and to conduct a constitutionally adequate investigation.**

This is the subject of a Motion *in Limine*, which are not due until January 17, 2023.

**Defendants' Stated Reason No. 6: the cumulative nature of the reports, in contravention of the rule that a party should be allowed a single expert per subject matter.**

This is the subject of a pending and premature Motion *in Limine* filed by Defendants, which Plaintiff will respond to by Monday, September 26, 2022.

As none of these issues are related to filing *Daubert* motions, and most of these issues are wholly unrelated to rebuttal reports, these six (6) reasons should be dismissed as irrelevant to the relief sought in Defendants' Motion because they are not indicative of good cause for the requested extensions.

> **2) The following issues have been rectified and therefore not a basis for good cause for an extension of deadlines.**

**<u>Defense Medical Examination</u>:**

Since the filing of Defendants' Motion, a defense medical exam has been confirmed and Plaintiff has agreed to submit to a four (4) hour examination by Defendants' rebuttal expert this

---

[7] However, this statement lacks contest. Ms. Solomon Outlaw and Mr. Outlaw testified in their depositions that they discovered, through the process of discovery in this case, that their tax returns required revisions. Thus, they obtained private tax advice and representation and recently submitted a revised tax return (which was disclosed to Defendants as soon as counsel for Plaintiff received it from Mr. Outlaw's tax professional. Any information that was produced after the disclosure of expert reports was not relied upon by Plaintiff's experts as they lacked access to this information, too.

Friday, September 23, 2022, beginning at 3:45 p.m. – the only date and time workable for Defendants' expert, which Plaintiff accommodated.

The timeline on this issue is again illustrative of Defendants' litigation practice/tactics in this case:

- On Saturday, September 17, 2022, counsel for Defendants sent a "high priority" email to counsel for Plaintiff asking Plaintiff to submit to a medical exam at 3:45 p.m. the following Friday. This request was not accompanied with any information about 1) the identity of the examining physician, 2) the scope of the exam, or 3) the location of the exam.

- Plaintiff responded on Monday morning, September 19, 2022, requesting this information, as well as requesting good cause for an examination of Plaintiff.

- It was not until 9:33 p.m. on Monday, September 19, 2022, that Defendants first disclosed the identity of their examiner, Dr. Michelle Joy, and the proposed scope (in the form of a draft stipulation) for Plaintiff's review.

- The very next morning, less than 12 hours later, at 8:32 a.m. on Tuesday, September 20 2022, Defendants filed their instant Motion for Extension, citing as a basis for good cause for an extension the fact that they "found […] an expert who could perform an independent medical examination of Plaintiff, **a rebuttal exam for which Plaintiff has yet to confirm he is willing to sit,** which further exacerbates the compressed period for rebuttal reports and motions practice." See ECF Doc. 144 at p. 9. See also, the full email exchange on this point which Defendants describe in their motion, attached as **Exhibit C.**

As presented, Defendants' Motion suggests that Plaintiff had delayed in addressing Defendants' "high priority" requests that Mr. Outlaw sit for a DME at only one (1) specific date and time that worked for Defendants' expert, who they had not identified until 9:30 p.m. the night before filing a motion for extension at 8:30 a.m. the next morning, and where Plaintiff's counsel had already exchanged *nine* (9) emails on the day prior (September 19, 2022), including citations and references to Federal Rules and legal opinions applicable to the parties' stated positions on the topic. See **Exhibit C.**

Lastly, to the extent that Defendants "found" a psychology expert for the first time after the production of Plaintiff's expert reports for purposes of rebuttal, Defendants cannot claim that Plaintiff's production of a report from a psychologist, opining on Mr. Outlaw's emotional and psychological damages, which are plainly plead in his Complaint and were the subject of discovery, and after Mr. Outlaw's treating therapist had already been deposed and had been the subject of a motion to compel by Defendants (see ECF Doc. 77, p. 12-13), was something they could not have anticipated and planned for ahead of time such that an extension of the deadlines is warranted.

**Non-Disclosures or deficiencies in Plaintiff's Expert Production**:

Defendants claim they are "further hampered in their ability to produce timely rebuttal reports by Plaintiff's failure to comply with F.R.C.P. 26's requirements." See ECF Doc. 144, p. 6. However, any perceived deficiencies should now be rectified based upon Plaintiff's responding correspondence on this issue. See **Exhibit A.**  This morning, at 2:06 a.m. Plaintiff's counsel received a reply correspondence from counsel for Defendants stating that they still "disagree that all deficiencies in [their] letter have been corrected" and maintain their need for an extension of deadlines, and further specifically requested that their reply correspondence be attached as an exhibit to this instant Response, as it is, see **Exhibit F.**  Counsel for Plaintiff has not had time in the past ten (10) hours since 2 a.m. had the time to thoroughly review or respond to Defendants' reply correspondence and therefore does not offer further argument on this point but requests that, should this Court request additional briefing on this dispute, that Plaintiff be afforded the opportunity to do so.

Again, the timeline on this issue is illustrative of Defendants' litigation practice/tactics in this case:

- At 10:41 a.m. on Monday, September 19, 2022, Defendants sent a six (6) page deficiency letter (including a 2-page list of identified items with corresponding requests for clarification). <u>See</u> **Exhibit D**.

- At 3:49 p.m. on Monday, September 19, 2022, the undersigned counsel emailed Defense counsel stating an intent to respond to the letter "shortly," (and after acknowledging being tied up with other matters earlier in the day). <u>See</u> **Exhibit E**.

- The next morning, on at 8:32 a.m. on Tuesday, September 20, 2022, without even affording Plaintiff a full business day to respond to the six (6) page deficiency letter, Defendants filed their instant Motion for Extension, claiming as a basis for extension that **"Plaintiff has yet to provide an anticipated time frame for remediation,"** of the identified "deficiencies."   (ECF Doc. 144 p. 6).

Plaintiff's expert disclosures were not deficient, and Plaintiff provided Defendants with further clarification of any points on this issue that they sought to address, in writing. <u>See</u> **Exhibit A.**

With regards to Plaintiffs' non-retained experts, Defendants had every reason to expect that Plaintiff may designate them as possible experts. Disclosure of these experts cannot be an undue surprise such that an extension of deadlines is necessary.

First, Defendants *did* anticipate that Patricia Cummings, Esq., former Chief of the Philadelphia Conviction Integrity Unity ("CIU") may be identified as an expert, because they retained a career prosecutor with experience in evaluating the integrity of convictions and produced a 189-page report curiously detailing the failures of the Philadelphia CIU, which is not a party to this case nor is their conduct at issue in the claims or defenses.

Second, Defendants had every reason to anticipate that Mr. Toliver, Plaintiff's treating therapist, may be identified as an expert as he was repeatedly asked for his "opinions" at the deposition, and even provided his opinion "to a reasonable degree of certainty," which drew an objection from Defendants *and a subsequent line of questioning* premised upon the observation that counsel for Plaintiff was attempting to designate the witness as an expert:

> Q.      In the context of the discussions that we've had about PTSD and about anxiety disorder related to Don, have all of the statements that you've made been **to a reasonable degree of certainty in your field of expertise**?
> MS. ROSENTHAL: Objection.
> BY MR. VAN NAARDEN:
> Q.      You can answer.
> A.      Yes.

<u>See</u> Testimony of Marvin Toliver, MWS, LSW, dated June 13, 2022, at p. 94:1-10 (emphasis added). It must be noted that the above-cited exchange was immediately followed by follow-up questions from counsel for Defendants which included commentary by counsel for Defendants that Plaintiff's counsel was "supposedly potentially trying to qualify him as an expert witness." <u>Id</u>, at p. 95:3-7.

Regarding Plaintiff's retained experts many of these, too, should have been reasonably anticipated by Defendants and Plaintiff had no obligation to inform Defendants in advance of the expert report disclosure deadline, the specific number or nature of experts that Plaintiff planned to disclose.  Plaintiff's Complaint includes detailed descriptions of his economic and non-economic damages – both of which have been the subject of extensive discovery request by Defendants, (specifically since the original Rule 16 conference) indicating their awareness of this aspect of Plaintiff's claims and his obligation to prove such aspect of his claims. Further and as a practical matter, given the frequency with which experts in the field of psychological damages and economic damages are presented in the course of civil litigation, the City Law Department should be well equipped to identify and obtain rebuttal experts on these topics to the extent they determine it a strategic advantage to do so.

Regarding Plaintiff's retained liability experts, Defendants appear to have already obtained a rebuttal police practices expert. To the extent that he/she seeks an extension of the deadlines due to finding him/herself in the unenviable position of rebutting not only all three (3) of Plaintiff's

liability expert reports, but also the deposition testimony of Defendants' *own agents* (current and former PPD Detectives and higher-ranking officers), which confirm and support the findings of Plaintiff's experts,[8] Plaintiff does not oppose the extension so long as it does not impact the extension of the February trial date.

   3)   **The following issues are irrelevant or affect both parties equally and therefore are not a basis for good cause for an extension of deadlines that only serves one party and prejudices the other.**

**Religious Holidays:**

   Lead counsel for Plaintiff also observes these same holidays identified by counsel for Defendants and will accommodate Defense counsel's observance of the same. While Plaintiff and his counsel respect the observance of religious holidays, these are not conflicts which cannot be planned for as they have been on the calendar since the issuance of this Court's most recent Scheduling Order many months ago.

**Competing Deadlines and Obligations:**

   On page 10 of Defendants' Motion (ECF Doc. 144), Defense counsel also claims that "a number of other scheduled commitments including depositions, mediation and court hearings in

---

[8] See, Deposition testimony of Det. John Harkins, "I don't know that I've ever put exculpatory information into an affidavit." Dep. Trans. p. 56:7-19; see also, agreement that constitution requires contradictory statements provided by the same witness to be summarized in the affidavit of probable cause in order to provide the factfinder with credible and relevant information. p. 60:1-24, p. 61:1-3. See also, deposition testimony of Defendant Jeffrey Piree confirming that it was a police officer's job to include exculpatory evidence in an affidavit of probable cause, Dep. Trans. p. 86 – 87, but that he was not trained to include exculpatory information in affidavits for warrants. Dep. Trans. p. 261, and further that he was not trained to know that he could not include information in an affidavit of probable cause if he had serious doubts as to that information's veracity, Dep. Trans. p. 33:16-24, 17:1-7. See also, testimony of Detective John McNamee who agreed that inclusion of only one version of a witness' inconsistent statements rather than inclusion of a summary of the witnesses' multiple inconsistent statements was a violation of the Fourth Amendment and something that he "would never do." Dep. Trans p. 90-92. See also, Detective Peterman's admission that he did not include exculpatory information in affidavits of probable cause which was the teachings, customs and practice within the PPD, Dep. Trans. p. 301-302. See also, deposition testimony of Captain Francis Healy, who agreed that police officers must include in the affidavit of probable cause a summary of conflicting statements of eyewitnesses where probable cause is based on eyewitness testimony, Dep. Trans p. 62:10-22, and that failure to do so is in violation of the Fourth Amendment, Dep. Trans. p. 72: 12-17.

other matters" serves as further basis for an extension. While Plaintiff's counsel respects and certainly understands the busy schedule of a litigator, this is a normal time-management issue not unique to this case or this specific period of extension. Without further detail as to specific and unmovable conflicts (none of which have been provided with any kind of specificity to Plaintiff's counsel), an attorney's general busy calendar does not constitute good cause to require Mr. Outlaw to further delay his trial date in this case. Furthermore, Plaintiff's counsel has made every effort to manage their own calendars to not only accommodate the Scheduling Orders of this Court, but also to accommodate Defendants repeated "urgencies" and demands for prompt attention and replies and availability for meet and confers, depositions and other discovery-related endeavors, sometimes with just a days' notice at the end of this discovery period. The efforts of Plaintiff's counsel to accommodate these issues includes rescheduled depositions in other cases, rescheduled client meetings in other cases, extension for written discovery responses in other cases, and cancelling or rescheduling personal commitments. It would be manifestly unfair and prejudicial, now, for Defendants to claim the necessity of an extension simply because they, too, have general conflicting professional obligations without providing a specific basis for the relevance of this request.

**<u>Reputation</u>**:

Defendants highlight the "extraordinarily serious and reputationally damaging conduct, including having committed perjury" which Defendants are accused of in Plaintiff's Complaint and note the taxpayer dollars at play in defending such conduct. Yet, Defendants blatantly disregard the reputational damage to Plaintiff for being wrongfully accused of *murdering someone* and which Defendants continue to contest and re-litigate in this instant civil action, and the further reputational damage Plaintiff must defend against for the repeated and unfounded claims by Defendants in this case that Plaintiff has committed fraud, coercion, intimidation of witnesses (all of which are crimes)

and continue to suggest that he somehow concocted an elaborate scheme to get over half a dozen witnesses to lie on his behalf so that he could fool a judge into vacating his sentence and then sue the City of Philadelphia and Detectives Peterman and Piree – none of which, even if true, tends to prove that Mr. Outlaw is responsible in any way for the crimes for which he was wrongfully convicted and exonerated.  The taxpayers of this City and this jurisdiction would likely be horrified to learn of the money that was used to wrongfully arrest, prosecute, convict and incarcerate an innocent man, and then essentially re-try him for those crimes to avoid taking responsibility.

**B.**     **Defendants' Motion requires clarification of inaccuracies**

In an effort to present the Court with a complete and accurate description of the status of this case and the information upon which Defendants ask this Court to find good cause and extend deadlines, Plaintiff provides the following chart, which has, unfortunately, become a common component of Plaintiff's responsive filings (see Plaintiff's Response to Defendants' Motion to Compel, ECF Doc. 84 (pg. 4-8); see also, Plaintiff's Response to Defendants' Motion for Sanctions, ECF Doc 128 (pg. 6-14):

| Statement by Defendants | Additional Context Provided by Plaintiff |
|---|---|
| "fraudulent" tax returns.<br><br>Defendants claim that "Plaintiff testified in his deposition that his tax returns were fraudulent."<br>ECF. Doc. 144 p. 7. | Plaintiff did not describe his conduct in filing his tax returns as "fraudulent." Rather, Plaintiff explained that he relied on his wife to file his tax returns and he did not know why this was claimed as a deduction. He explained that he and Monique discussed his intention to enroll in Delaware County Community College, but that he never attended.<br>See Dep. Trans. Donald Outlaw, dated July 26, 2022, at p. 50:23-54:23.<br><br>Plaintiff further explained that he was in the process of filing a revised tax return which would be provided to Defendants. Id. at 270:24-271:1-9.  This material was provided to Defendants on September 16, 2022, within |

| | one (1) day of Plaintiff's counsel obtaining it from Mr. Outlaw's tax accountant.<br><br>This specific exchange is attached and highlighted as **Exhibit G**. |
|---|---|
| "previously undisclosed tax returns."<br><br>Defendants claim that "On September 16, 2022, Plaintiff for the first time disclosed years of previously undisclosed tax returns pertaining to a business for which Outlaw is a partner. He also produced W2 forms, which reveal that Plaintiff misrepresented his income on previous tax forms and failed to accurately respond to defendants' interrogatories about employment opportunities."<br>ECF. Doc. 144 p. 7. | As described above, Plaintiff explained during his deposition that he was in the process of revising his tax returns, which would be – and were—produced to defendants. To suggest that they were somehow withheld by describing them as "previously undisclosed" where they did not even exist until recent weeks, is inaccurate.<br><br>Further, Mr. Outlaw testified that he did not personally prepare his tax returns, but that he trusted his wife to do so. This exchange is displayed in **Exhibit G,** to suggest that he "misrepresented" his income on tax returns that he did not prepare and that he has taken steps to revise since realizing the inaccuracies, is an incomplete characterization without full context.<br><br>Further, any tax returns or financial documents (W2) produced after the production of expert reports were equally unavailable to Plaintiff's experts. Considering that Defendants did not provide damages experts, this material is simply provided as a distraction. |
| Of the correspondence on September 16, 2022, described by Defendants as a "Meet-and-Confer" wherein their perceived deficiencies with Plaintiff's expert reports were communicated.<br>ECF. Doc. 144 p. 6 | Counsel have not conducted a formal meet-and-confer on the substance of Defendants' perceived deficiencies in Plaintiff's expert disclosures. Rather, on September 19, 2022, counsel for Defendants informed counsel for Plaintiffs that a deficiency letter would be forthcoming. No further substantive discussion was had. |
| Of the phone call between Defense counsel and Plaintiff's counsel regarding expert deadlines:<br>"Defendants' counsel notified Plaintiff's counsel by phone **well in advance** of the disclosure deadline of the fact that Defendants | "well in advance"<br><br>It was not until Defendants' improper Motion for Sanctions that Plaintiff first learned of Defendants intent to base a defense upon the authenticity of various documents in this case. On   August   24,   2022,   Defendants   first |

| | |
|---|---|
| now anticipated disclosing **multiple experts** due to factual developments in the case." ECF Doc 144 (p. 5, fn, 1) | discussed with counsel for Plaintiff's the logistics of having their "forensic expert" examine Mr. Outlaw's original criminal file, which had just been made available to counsel or Plaintiffs for the first time, that same day.<br><br>The discovery deadline in this case was August 29, 2022. The expert disclosure deadline was September 13, 2022. Further Defendants never described the type of "forensic" examination their expert was intended to perform, nor did they identify him by name during any of the in-person inspections of the files.  This hardly constitutes notification "well in advance" of the disclosure deadline.<br><br>"multiple experts"<br>To the extent that this statement is meant to imply that Defendants provided Plaintiff with insight into their anticipated expert production as a courtesy, is inaccurate. Rather, Defendants simply stated that there were "others" when vaguely referring to the experts they intended to disclose. At no time were the specific numbers, subject matters, or any other information shared between the parties regarding their anticipated expert disclosures |
| Of Plaintiff's experts' reference to other cases and court filings "all of which appear to contain cherrypicked factual material responsive to Defendants' prior requests for production" ECF Doc. 144 p. 5 | All of these referenced cases involve the Philadelphia Police Department and/or the City of Philadelphia --- Defendants in this case. Further, all of these cases have been identified in discovery disclosures for several months.  It is not the fault of Plaintiff that City Defendant's history contains such a multitude of instances of unlawful and unconstitutional conduct that their counsel needs more time simply to "educate themselves" about those cases in order to meaningfully respond to expert reports. |
| Of the footnote related to the sentence above "Defendants are particularly surprised about the inclusion of such extra-record materials given the briefing and oral argument that took place on Defendants' Motion to Compel in late May and early June 2022." | Again, if Defendants intend to suggest that counsel for Plaintiff is intentionally misrepresenting anything to this Court, such a serious accusation must be stated with particularity so that it may be appropriately addressed. Defense counsel's total lack of |

| ECF Doc. 144 at p. 6. | specificity, citation or direct reference in this vague but serious suggestion is totally inappropriate. |
|---|---|

**C.**     **<u>Plaintiff would be prejudiced if an extension of deadlines also extends the trial date</u>**.

First, Plaintiff's conduct serves no basis for the reasons Defendants seek an extension. Plaintiff has gone to great lengths to accommodate the demands of Defendants throughout discovery. Some of the most recent examples include Defendants demands for a last-minute inspection and destructive testing of Plaintiff's original criminal file housed at the Criminal Justice Center (CJC) by an unidentified expert. Plaintiff not only rearranged the schedules of counsel to accommodate Defendants' need to conduct the inspection on only one (1) available date: September 8, 2022, but also promptly secured a similar expert (based on Plaintiff's best guess as to the type of expert Defendants had secured but not identified) and arranged travel for that out-of-state expert to arrive in Philadelphia to attend the inspection as well. Plaintiff also promptly reviewed and agreed to a stipulation as to the parameters of the inspection with less than a week before the examination and not only caused no delays with regard to this requested inspection but actually facilitated its occurrence for Defendants.

In this serious civil rights case where Plaintiff carries the burden of proof, Plaintiff has complied with all deadlines and has not sought an extension – either formally from the Court or informally as a courtesy from counsel.

Defendants, on the other hand, have failed to take steps to prepare for the need to serve rebuttal reports and otherwise litigate this case expeditiously, and have sought extensions of deadlines (or simply blown deadlines), repeatedly since the very beginning of litigation in this case. <u>See</u> filing of Answer on September 13, 2021; twenty-four days overdue ian in violation of this Court's Order requiring it to be filed on August 20, 2021, (ECF Doc. 14), and which Plaintiff's

counsel brought to Defendants' attention as a courtesy before taking any formal action; see also Defendants' Responses to multiple written discovery requests: [First Set of Interrogatories and Requests for Production of Documents; First Set of Requests for Admissions; Second Set of Requests for Production of Documents; Fourth Set of Requests for Production of Documents; Fifth Set of Requests for Production of Documents; Sixth Set of Requests for Production of Documents; Seventh Set of Requests for Production of Documents; Eighth Set of Requests for Production of Documents; and Ninth Set of Requests for Production of Documents], see also Plaintiff's Discovery Requests to Defendants, which *remain outstanding*: [Eleventh Set of Requests for Production of Documents; Twelfth Set of Requests for Production of Documents; and Thirteenth Set of Requests for Production of Documents]; see also Defendants' Motion to Compel (ECF Doc. 77) which characterized Plaintiff's conduct in discovery as failing to produce large quantities of responsive documents to which Plaintiff had to take significant time to respond, and to prepare a chart documenting the discovery efforts of his counsel including the enormous task of reviewing, redacting, and producing over 16,000 pages of records for privilege, in-house, in approximately one (1) month (ECF Doc. 84), and which resulted in a finding by the Court that Plaintiff's counsel "for the most part, diligently complied with Defense counsel's document request," but which still resulted in an extension of the case deadlines at Defendants' request (ECF Doc. 90); see also, Motion for Extraordinary Relief to depose Charles Paladino in the eleventh hour (ECF Doc. 137), claiming that he was "the single most central third-party witness", despite Defendants decision to wait until the last minute to depose him (where Plaintiff had already deposed Mr. Paladino in March and April, 2022). It should be noted that all while claiming they lack appropriate time to prepare for (and claim they could not prepare in advance for) Plaintiff's expert discovery, Defendants have somehow managed to file several premature motions such as Defendants' Motion for Sanctions

(which was denied, see ECF Doc. 143) and a Motion *in Limine* regarding preclusion of duplicative expert opinions. see ECF Doc. 145.

Defendants' litigation practice of hastily cramming into the last few days before a deadline, that which could have been planned for in advance, has already come at a great cost to Plaintiff and his counsel. To use it now as a basis for further delaying Mr. Outlaw's ability to present this case to a jury and resolve these claims would seriously prejudice the Plaintiff and he respectfully requests this Court to preserve the trial date in this case of February 6, 2023.

## IV.   **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendants' Motion for an extension of the expert rebuttal, *Daubert* reports, expert discovery deadlines and Motions for Summary Judgment, which would cause the remainder of the deadlines to be extended as well. If the Court will accept the extension of expert rebuttal, *Daubert* reports, expert discovery deadlines, and Motions for Summary Judgment, while preserving all other deadlines in this case, Plaintiff has no objection.

**VSCPLAW**   VAN NAARDEN · SPIZER
CHASE · PINTO

*Julia Ronnebaum*
JOSHUA VAN NAARDEN, ESQUIRE
JULIA RONNEBAUM, ESQUIRE
Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103
TEL:  215-960-0000
FAX:  215-960-0384
jvannaarden@vscplaw.com
jronnebaum@vscplaw.com

*Attorneys for Plaintiff*

Date: September 22, 2022

## <u>CERTIFICATE OF SERVICE</u>

I, Valerie A. Wilus, Paralegal to Julia Ronnebaum, Esquire, hereby certify that I caused a

true and correct copy of Plaintiff's Response to Defendants' Motion for Extension of Deadlines to

be served upon the following persons listed below via ECF filing:

Danielle B. Rosenthal, Esquire
Katelyn Mays, Esquire
City of Philadelphia – Solicitor Office
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
danielle.rosenthal@phila.gov
Katelyn.mays@phila.gov

*Attorneys for Defendants*



*Valerie A. Wilus*

VALERIE A. WILUS

Dated:  September 22, 2022

# EXHIBIT A

# VSCPLAW
### VAN NAARDEN ▾ SPIZER
### CHASE ▾ PINTO

**Julia Ronnebaum, Esq.**
*Associate*

Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103
**Email**   jronnebaum@vscplaw.com
**Main**   215.960.0000
**Direct**   215.960.0388
**Fax**   215.960.0384
        **www.vscplaw.com**

September 21, 2022


**VIA Electronic Mail**
Danielle Rosenthal, Esquire
Katelyn Mays, Esquire
City of Philadelphia - City Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
*Attorneys for Defendants*

> **Re**:   **Outlaw v. City of Philadelphia, *et al.***
>            **Docket No. 2:21-cv-01290-CFK**
>            *Plaintiff's Response to Defendants' Expert Discovery Deficiency Letter*

Dear Counsel:

We are in receipt of your correspondence dated September 19, 2022, regarding Plaintiff's expert disclosures. Plaintiff produced expert reports in compliance with the Court-Ordered deadline last Tuesday, September 13, 2022. Plaintiff's expert reports are in compliance with the Federal Rules, as described in more detail, below. However, to the extent that Defendants seek additional information from Plaintiff's Experts, Plaintiff provides the below information in an effort to eliminate any basis for further delay by Defendants and move this case froward towards trial.

It must be noted at the outset that a Motion to Extend Deadlines was filed by Defendants less than twenty-four (24) hours after submitting the correspondence regarding expert discovery deficiencies to counsel for Plaintiff. Had Defendants merely afforded Plaintiff's counsel a reasonable opportunity to respond, several of the issues raised in the filed Motion would not be relevant. Plaintiff understands the time-sensitive nature of a Motion for a request for extension, however Defendants apparent lack of preparation for expert discovery has created several unnecessary "urgencies" for counsel as well as several third parties in recent weeks – all of which have been accommodated by Plaintiff at great costs.

Again, Plaintiff stated an intent to thoroughly respond to Defendants' most recent urgency, (this instant expert discovery dispute) the same date that Defendants' expert deficiency letter was received. (See email correspondence from Plaintiff's undersigned counsel sent at 3:49 p.m. on Monday, September 19, 2022.) Yet not even a full business day was afforded for Plaintiff to do so.

1

## I.      Disclosures of non-retained expert witnesses.

Disclosures of Patricia Cummings and Marvin Toliver do comply with F.R.C.P. 26(a)(C)(2)(C). Plaintiff has identified that these two witnesses are expected to provide expert testimony in line with the facts and opinions offered in their deposition testimony in this case. The facts and opinions to which these witnesses are expected to testify are no secret as they were specifically asked to provide ***opinions*** during their depositions.   Mr. Toliver even provided such opinions ***"to a reasonable degree of certainty"*** during his deposition:

> Q.      In the context of the discussions that we've had about PTSD and about anxiety disorder related to Don, have all of the statements that you've made been **to a reasonable degree of certainty in your field of expertise**?
> MS. ROSENTHAL: Objection.
> BY MR. VAN NAARDEN:
> Q.      You can answer.
> A.      Yes.

<u>See</u> Testimony of Marvin Toliver, MWS, LSW, dated June 13, 2022, at p. 94:1-10 (emphasis added). It must be noted that the above-cited exchange was immediately followed by follow-up questions from counsel for Defendants which included commentary by counsel for Defendants that Plaintiff's counsel was "supposedly potentially trying to qualify him as an expert witness." <u>Id</u>, at p. 95:3-7.

Similarly, you are aware, because you attended her deposition in January 2022, that Ms. Cummings opined that more likely than not, "no reasonable juror would have found [Mr. Outlaw] guilty beyond a reasonable doubt." <u>See</u> Dep Transcript p. 336:1-24.

Notably, none of the cited opinions used to support Defendants' position reflect the law of the Eastern District of Pennsylvania or the Third Circuit. Thus, the citations to a 2012 opinion from the Western District of Oklahoma, and the 2016 opinion from the District of Minnesota are unhelpful. The sentence cited from the Oklahoma case appears to refer to disclosure requirements "*for retained experts.*" The full passages reads as follows:

> **for retained experts**, the written report itself must contain, among other things, a complete statement of all opinions the witness will express and the basis and reasons for them. The court finds that **reference to other testimony, without providing the complete statement of opinions and basis therefor in a self-contained document is not only insufficient under Rule 26, but is unworkable**. The court is not aware of any local practice that would replace this clear requirement of a written report for retained experts, particularly over another party's objection.

<u>Ingram v. Novartis Pharms. Corp.</u>, 282 F.R.D. 564–65 (W.D. Okla. 2012), <u>order clarified on reconsideration</u> (June 29, 2012), (emphasis added).

2

Further, Plaintiff's description of the anticipated subject matter of each non-retained expert in this case is sufficiently specific such that Defendants are aware of the scope of these witnesses' anticipated testimonies and goes beyond blanket categories such as "causation." Id. (i.e., Patricia Cummings' anticipated subject matter of testimony is to include "[t]hat which she testified to during her deposition in this case, taken on January 26, 2022, including the basis for the underlying *nolle prose*, the re-investigation and findings undertaken by the Philadelphia District Attorneys' Office, including the Conviction Integrity Unit, and Mr. Outlaw's innocence.") Although found in the topic summary paragraph, instead of the opinion summary paragraph of Plaintiff's disclosures, this information provides Defendants with the requisite information and is more than "simply generic references to the expert's deposition testimony or to general matters that are at issue in the case" as in the cited case from Minnesota: Luminara Worldwide, LLC v. Liown Elecs. Co., No. CV 14-3103(SRN/FLN), 2016 WL 6902156 (D. Minn. Feb. 25, 2016).

Here, Plaintiff provided a detailed description of the context for these witness' testimony.

For Mr. Toliver:

> That which he testified to during his deposition in this case, taken on June 13, 2022, including the basis for his treatment of Plaintiff, Plaintiff's symptoms and manifestations of trauma and PTSD and adjustment disorder with anxiety, the underlying cause(s) of Plaintiff's symptoms and need for therapy, etc.

For Ms. Cummings:

> That which she testified to during her deposition in this case, taken on January 26, 2022, including the basis for the underlying *nolle prose*, the re-investigation and findings undertaken by the Philadelphia District Attorney's Office, including the Conviction Integrity unit, and Mr. Outlaw's innocence.

However, to the extent that Defendants feel ill-prepared for the anticipated trial testimony of these witnesses, Plaintiff provides the following additional summary of information that has already been in the possession of both parties for the same amount of time:

- Mr. Toliver is anticipated to testify that Mr. Outlaw displays the symptoms of PTSD and adjustment disorder with anxiety as contained in his deposition testimony including:
  - o  Mr. Outlaw displayed glaring symptoms that were congruent with post-traumatic stress disorder and adjustment disorder with anxiety (pg 75; 80)
  - o  Mr. Outlaw had directly experienced a traumatic event, specifically, bring wrongfully convicted of a crime and incarcerated for a crime that he did not commit; (pg. 76)
  - o  Mr. Outlaw experienced repeated or extreme exposure to the aversive details of the traumatic event; (pg. 76)

3

- o Mr. Outlaw had recurrent distressing dreams in which the content and/or effect of the dream were related to the traumatic event / wrongful incarceration; (pg. 77)
- o Mr. Outlaw exhibited avoidance or efforts to avoid distressing memories associated with his wrongful conviction; (pg. 81)
- o Mr. Outlaw had a persistent negative emotional state (pg. 83)
- o Mr. Outlaw had feelings of detachment or estrangement from others that were perceived to be related to the wrongful conviction (pg. 84)
- o Mr. Outlaw experienced sleep disturbances related to the wrongful incarceration (pg. 85)
- o Mr. Outlaw still requires additional mental health treatment for the PTSD and the adjustment disorder with anxiety (see pg. 92)

- Ms. Cummings is anticipated to testify that Mr. Outlaw is more likely than not, innocent of the homicide and related crimes for which he was charged, convicted, and exonerated. This conclusion will be based off her description of the CIU's investigation of the case, and her professional conclusion to file the *nolle prose* rather than recommend to proceed against Mr. Outlaw with a re-filing of the homicide and related charges, as well as the opinions contained in the Motion for *Nolle Prose,* including that the Commonwealth lacked sufficient evidence to prove beyond a reasonable doubt that Mr. Outlaw is guilty of the homicide for which he is charged, consistent with the filing. Ms. Cummings is also expected to testify regarding her opinion that the lack of follow-up by police into suspect Derrick Alston was "disturbing". Ms. Cummings is further anticipated to testify consisted with her deposition testimony that based on her evaluation of the evidence, it was more likely than not that Donald Outlaw was innocent of murdering Jamal Kelly, that Mr. Outlaw's conviction lacked integrity and was not just, and that there was not enough evidence to go forward with the re-prosecution of Mr. Outlaw.

## II.   <u>Retained expert disclosures.</u>

Plaintiff has also complied with the disclosure requirements for retained experts. The issues described in Defendants' correspondence regarding citations to resources reviewed by experts are addressed as follows:

**Darrin Porcher** - His stated "familiarity with the tortured history of the Philadelphia Police Department," is based upon the materials that he reviewed – as discussed in the paragraphs following that sentence. (<u>See</u> Porcher Report pg. 37 which delves into a description of the materials reviewed regarding the tortured history of the PPD, and also provides a summary recitation of the very tortured history, including but not limited to: the 1978 *Inquirer* investigation regarding an 52 cases of police brutality, (pg. 37),  the 1980s federal injunction for illegal searches and seizures, (pg. 37), the 1980 – 1990 investigations into exonerations due to PPD fabrication of evidence, false police testimony and concealment of evidence, (pg. 37 - 38), the pattern and practice of PPD Homicide detectives through the early 2000 regarding exonerations premised upon police misconduct, (pg. 38),  the 1996 NAACP litigation involving unlawful and unconstitutional practices, (pg 38), additional individual allegations of police misconduct (pg 39 plus citation to

4

PLAINTIFF031491), the Dwayne Thorp case involving 11 witnesses who were verbally and physically abused by Detective Pitts' habitual practice to do so, (pg 39), the Eugene Gilyard case involving excluding exculpatory information in an arrest warrant, (pg. 39), Captain Francis Healy's testimony in the Gilyard case that police officers were inappropriately taking witnesses against their will to be interviewed (pg 39), and finally culminating with the testimony in this case from Defendant Detectives Piree and Peterman as well as Detectives Harkin and Boyle, and Lt. Deegan, who all confirmed that 1) they were not taught to and did not include exculpatory information in arrest warrants, and 2) they were not taught to and did not include summaries of all eyewitness statements when a warrant is based on that eyewitness testimony. (pg. 40).).

The disclosure deficiency letter also claims that Dr. Porcher has failed to identify or disclose the material that he refers to when he says that he has "examined other homicide cases." See Correspondence pg. 3. This is inaccurate. Dr. Porcher *does* disclose the "other homicide cases" he has reviewed and relied upon in this case. Specifically, Dr. Porcher provides fulsome summaries of these cases, complete with docket numbers, in the paragraphs that directly follow that statement. (See Report pg. 41- 43). This material is derived from the Memorandum and Opinion on Motion for Summary Judgment and the Report(s) of McCauley in the Shaurn Thomas case (see ¶¶1(a), (b), and (f) of the listed materials Report pg 10).

**Alexandra Whittle** – the "data points" cited in your correspondence are clearly described in the preceding sentences of her report, which will not be re-copied and pasted here, but which include the "Pennsylvania Sentencing Guidelines, Currently Chapter 303 *et. sec.,"* the "Pennsylvania Parole Act of 1941 (Pennsylvania Parole laws)," the "Pennsylvania Parole Handbook published annually ad made publicly available by the Pennsylvania Parole Board" all of which is "in addition to legal trainings that [she] received regarding the application of the Pennsylvania sentencing and/or parole structure and [her] years of experience working as a law-trained professional within the criminal justice system of Pennsylvania, and Philadelphia County (and now Delaware County.)" To the extent that these items need to be re-stated in the list of materials reviewed, Plaintiff will provide a supplemental list upon request, however the exercise seems to be nothing more than a time constraint as the material has clearly been described within the four corners of the expert's report such that there is no surprise or prejudice to Defendants. Further, to the extent that counsel for Defendants are unable to find this basic, publicly accessible legal material, please see the links below which took mere minutes to locate through a simple google search:

- https://www.pacodeandbulletin.gov/Display/pacode?file=/secure/pacode/data/204/chapter303/chap303toc.html&d=reduce

- https://www.legis.state.pa.us/WU01/LI/LI/US/PDF/1998/0/0143..PDF

- https://www.parole.pa.gov/Information/Documents/Publications/Final%20Parole%20Handbook.pdf

- http://www.pacodeandbulletin.gov/Display/pacode?file=/secure/pacode/data/037/chapter63/chap63toc.html&d=reduce

More importantly, any specific professional resource identified by Ms. Whittle is one which the expert herself has consulted and relied upon and was not material provided to her by counsel for Plaintiff.  Thus, to the extent that Defendants seek copies of the legal resources and other material, appropriate requests may be made by Defendants.

**Michael Mosiniak** - First, he *did* identify CITY000001-669, which is, according to Defendants, purported to be the entire PPD homicide file, produced by Defendants to Plaintiff. This material is identified in the list of material reviewed, (see Report Appendix ¶81).   The fact that your correspondence suggests—for the first time—that the hard-copy homicide file kept in the possession and control of the PPD "***include[s] a significant quantity of documents not included on the list of documents identified by Bates number in Appendix A of the report***" (which includes citation to CITY 000001 – 000669, aka the scanned copy of the PPD Homicide File) raises serious concerns for Plaintiff as to the completeness of Defendants production and the accuracy of representations that productions are complete.

Second, he *did* state that he "was provided the opportunity to review what is left of the original homicide file," "on August 30, 2022." See Report, pg. 11 of 21. The issues presented in your correspondence with regards to the completeness of Mr. Mosiniak's materials reviewed are at best, the product of a hasty review of the materials, and at worst, an attempt to bolster the basis for a request for extension of deadlines where no basis—at least with regards to incomplete disclosures—exists.

## III.   <u>Items listed in Appendix A</u>.

Lastly, with regards to the items identified in "Appendix A" of your letter, Plaintiff offers the following responses in an effort to eliminate any basis for further delay by Defendants and move this case forward towards trial:

**Royal Bunin:**
The material requested for further identification is all material in the possession of Defendants and originated by Defendants. By way of further response, Mr. Bunin has reviewed the following responses to written discovery:

- Responses to Request for Production of Documents (3/18/22)
- Answers to Interrogatories - City of Philadelphia (3/31/22)
- Answers to Interrogatories – Peterman (3/31/22)
- Answers to Interrogatories – Piree (3/31/22)
- Supplemental Responses to Discovery (5/25/22)
- Supplemental Responses to Piree (6/7/22)
- Supplemental Responses to Peterman (6/7/22)
- Answers to 2nd Set of Interrogatories - Peterman (6/20/22)
- Supplemental Responses to Discovery (6/23/22)

**Michael Mosiniak:**

The material requested for further identification by Mr. Mosiniak includes links to Defendants' own websites.

- The "about the department" cite:
    - https://www.phillypolice.com/about/

- The "complaint spreadsheet" cite:
    - https://www.phillypolice.com/accountability/?_ID=110&_ClassName=CapPage#!#complaints

**Dr. Darrin Porcher:**

- Instructions for Civil Rights Claims Under Section 1983 (last updated August 2020)

**Dr. Wayne Ross:**

The request for more specificity in these documents, clearly described, and produced in discovery by Defendants, is nothing more than a delay tactic and cause for Plaintiff's counsel to spend unnecessary time helping Defendants makes sense of their own discovery production. However, in an effort to work cooperatively, Plaintiff provides the following additional information and expects Defendants to do the same with regards to Plaintiff's similar requests[1]:

- City of Philadelphia Case Registration Summary (CITY000474-485)
- Office of Medical Examiner Records (OUTLAWDAO2022000254-260)
- Crime Scene Service Report (CITY000326-329)
- Autopsy Photographs (CITY024109-24114)
- Incident Report – Derrick Alston – taken by Peterman (7/9/03) (CITY000513-517)
- Preliminary Hearing (10/29/2003) (CITY001006-1029)
- Temple University Hospital Records (OUTLAWDAO2022001276-1280)
- PPD Property Receipts (OUTLAWDAO2022000436-446)
- Scene Photographs (DAO 00262; 264; 265; DAO 03246; 3249; 3252; OUTLAWDAO2022001298-1300; OUTLAWDAO2022002426-2436; OUTLAWDAO2022002760; OUTLAWDAO2022002999; OUTLAWDAO2022003010-3012; OUTLAWDAO2022003283-3286; 3289-3292; 3300-3302)
- Google map photographs of the area (these are either copied into his report or identified as follows:
    - o OUTLAWDAO2022003283 – 3286;
    - o OUTLAWDAO 2022003289 – 3291;
    - o OUTLAWDAO 2022003300 – 3302;
    - o OUTLAWDAO2022002011 – 2012;

---

[1] Specifically, Plaintiff requests that Defense expert, Erich J. Speckin, identify the bates number associated with the "known" documents described on pgs 2-3 of his report. As acknowledged by Defendants' letter, there are several copies of the same document contained in discovery production. In the case of Mr. Speckin, the specific document relied upon by him as a "constant" or "known" signature from which he bases all other opinions, is highly important to a determination of the validity and ultimate admissibility of Mr. Speckin's opinions. Similarly, Mr. Milan also makes reference to various facts without providing any corresponding citation (i.e. asserting that Mr. Paladino has identified Kareem Greenwood in numerous statements as being involved in the assault at his house).

- o   OUTLAWDAO2022002999;
- o   DAO 03246; 3249; 3252
- Outlaw PowerPoint Presentation (OUTLAWDAO2022003186-3205)

**Dr. Susan Rushing:**
- Philadelphia Police Department Arrest Reports (DAO 00699-700; PLAINTIFF00119; PLAINTIFF00120-121)
- Department of Corrections DC47C Report (OUTLAWDAO2022008256-8258)
- Juvenile Lifer Packet (PLAINTIFF02730-2757; PLAINTIFF04045-4066; OUTLAWDAO2022008241-8262)
- Memo by Leigh Ann Benson of Cozen O'Connor (PLAINTIFF00302-305; OUTLAWDAO2022007993-8012)
- Stratford Career Institute Official Transcript (OUTLAWDAO2022008109-8117; PLAINTIFF000612-630)
- Medical Records from Dr. Bowden (PLAINTIFF19979-20096)
- Prison Medical Records (PLAINTIFF00631-1299)

**Romy Tota:**
- Responses to Request for Production of Documents (3/18/22)
- Answers to Interrogatories - City of Philadelphia (3/31/22)
- Answers to Interrogatories – Peterman (3/31/22)
- Answers to Interrogatories – Piree (3/31/22)
- Records of Pennsylvania Department of Corrections
    - PADOC01528-01531 – Career Pathways Report – Outlaw
    - PADOC01153-01189 – Sentence Status Summary – Outlaw
    - PADOC01190-01217 - Inmate Cumulative Adjustment Records – Outlaw
    - PADOC01218-01270 – Grievance/Misconduct Reports – Outlaw
    - PADOC01271-01354 – Evaluations/Adjustment Reports – Outlaw
    - PADOC01355-01398 – Correctional Plan Reports – Outlaw
    - PADOC01399-01400 – Misconducts Report – Outlaw
    - PADOC01401-01410 – Visit History – Outlaw
    - PADOC01411-01460 – Evaluations/Adjustment Reports – Outlaw
    - PADOC01461-1485 – Inmate Accounts System – Outlaw
    - PADOC01486-1527 – Monthly Account Statement – Outlaw
- Records of Pennsylvania Department of Corrections – Integrated Correctional Plan (PADOC01355-01398; PLAINTIFF04045-4066; OUTLAWDAO2022008241-8262; DAO07312–07332)
- Photos (PLAINTIFF0599-600)
- Paystubs from Urban Affairs Coalition (PLAINTIFF22698-22715)
- Certificate of Licensure to Operate a Home Care Agency (PLAINTIFF00615)
- Certificate of Completion (PLAINTIFF00612-00630; PLAINTIFF02701-2708; PLAINTIFF04134-4137; OUTLAWDAO2022008109-8117)
- Marriage License (PLAINTIFF02698; PLAINTIFF01358-1359)
- Certificate of Education (PLAINTIFF00612-00630; PLAINTIFF02701-2708; PLAINTIFF04134-4137; OUTLAWDAO2022008109-8117)

- Email Correspondence regarding job with PAAN (PLAINTIFF26909-26911)
- Job Search Efforts:
    - PLAINTIFF19951-19953 - Outlaw employment search – Looking Forward Philadelphia Program
    - PLAINTIFF19954 – Toliver Intake Paperwork Email
    - PLAINTIFF19955-19957 - Outlaw employment search – Chester County Hospital
    - PLAINTIFF19958-19959 - Outlaw employment search – Workday/Walmart
    - PLAINTIFF19960-19961 - Outlaw employment search – Workday/Walmart
    - PLAINTIFF19962 - Outlaw employment search – Flagger Force
    - PLAINTIFF19963-19965 - Outlaw employment search – Flagger Force Job Description
    - PLAINTIFF19966-19970 - Outlaw employment search – Flagger Force Employment Application (blank)
    - PLAINTIFF19971 - Outlaw employment search – Flagger Force Employee Benefits At-A-Glance
    - PLAINTIFF19972-19975 - Outlaw employment search – Walmart
    - PLAINTIFF22004-22005 – Outlaw employment search email (12/17/19) – Flagger Force
    - PLAINTIFF19945-19950; 20299-21845 – Solomon's Emails
    - PADOC01528-01531 – Career Pathways Report – Outlaw
    - PLAINTIFF22695-22697 – Outlaw Pennsylvania Department of Labor – Monetary Determination Pandemic UI Assistance
    - PLAINTIFF22716-22718 – Outlaw Employment Documents
    - PLAINTIFF26930-26933; 26939-26940 - SOS Restoration job application and acceptance
    - PLAINTIFF26927-26929 – Re-Entry program email
    - PLAINTIFF26912-26916 - Sam's Club offer of employment
    - PLAINTIFF26917-26926 - Flagger Force
- Medical Records from Einstein Healthcare Network (PLAINTIFF11762-11900)
- Medical Records from RXD Medication Services (PLAINTIFF22006-22009)
- Medical Records from John Bowden Jr., D.O. (PLAINTIFF19979-20096)
- Medical Records from OpenMRI (PLAINTIFF19979-20096)
- Reference Letters (PLAINTIFF02674-2696)
- Diplomas (PLAINTIFF00612-00630; PLAINTIFF02701-2708; OUTLAWDAO2022008109-8117)
- Records of Juvenile Lifer information (PLAINTIFF02730-2757; PLAINTIFF04045-4066; OUTLAWDAO2022008241-8262)


Very truly yours,

*Julia Ronnebaum*
JULIA RONNEBAUM
*Counsel for Plaintiff*

cc:   Joshua Van Naarden, Esquire, Counsel for Plaintiff, (*via email*)

9

**EXHIBIT B**

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

1. Civil Complaint of Donald Outlaw v. City of Philadelphia et al., No.: 21-cv-01290.

**PPD Directives**

1. CITY004186-4188 - PPD Statement of Ethical Principles (January 1988)

2. CITY004253-4267 - PPD Directive 61 Investigation Report (2/26/87)

3. CITY004243-4252 - PPD Directive 61 Investigation Report (7/28/97)

4. CITY001030-1039 - PPD-Directive 12.12 Investigation Report (2/1/01)

5. CITY001040-1045 - PPD Directive 33 Police and Suspect Photographs (8/18/99)

6. CITY004290-4306 - PPD Directive 50 Investigation & Charging Procedure (1/21/87)

7. CITY004307-4333 - PPD Directive 50 Investigation & Charging Procedure (5/6/96)

8. CITY001046-1063 - PPD Directive 50 Investigation & Charging Procedure (6/13/00)

9. CITY004334-4339 - PPD Directive 79 Disciplinary Procedure (4/14/80 - version 1)

10. CITY001082-1101 - PPD Directive 79 Disciplinary Procedure (4/14/80 - version 2)

11. PLAINTIFF17873-1788 - PPD Directive 8.6 Disciplinary Procedure (5/1/10)

12. CITY001102-1131 - PPD Directive 82 Criminal Identification Processing, Transportation and Temporary Detention of Adult Prisoners (3/8/82)

13. CITY004268-4271 - PPD Directive 106 Criminal Records (5/15/81)

14. CITY001132-1133 - PPD Directive 106 Criminal Records (10/23/02)

15. CITY004272 - PPD Directive 114 Right, Duty and Opportunity to Present Complaints or Information (1/8/82)

16. CITY004273-4274 - PPD Directive 114 Right, Duty and Opportunity to Present Complaints or Information (3/21/97)

17. CITY001137-1139 - PPD Directive 114 Employee's Responsibility to Report Corruption, Misconduct and Other Improper Acts Negatively Affecting the Department (10/8/99)

18. CITY001134-1136 - PPD Directive 114 Employee's Responsibility to Report Corruption, Misconduct and Other Improper Acts Negatively Affecting the Department (3/6/03)

19. CITY004275-4283 - PPD Directive 127 Complaints against Police (9/28/94)

20. CITY001140-1147 - PPD Directive 127 Complaints against the Philadelphia Police Department (11-13-00)

1

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

21. CITY004284-4289 - PPD Directive 135 Rules of Discovery (4/13/81)

22. CITY001148-1155 - PPD Directive 135 Rules of Discovery (5/12/00)

23. CITY001156-1165 - PPD Directive 139 Arrest Warrants (10/21/96)

   a) CITY021379-21388 – PPD Directive 139 – Arrest Warrants (3/25/13)

24. PLAINTIFF02206-02215 - PPD Directives 5.22 Arrest Warrants (9/1/20)

   a) CITY020702-20711 – PPD DIRECTIVE 5.22 – Arrest Warrant (9/1/20)

25. CITY001166-1177 - PPD Disciplinary Code

26. CITY004190-4242 - PPD Instruction booklet

27. CITY004344-4345 - PPD Memorandum Formal Statements (July 24, 1998)

28. PLAINTIFF02181-02205 - PPD Directive 5.23 Interviews and Interrogations – Rights of Individuals and Duties of Law Enforcement (5/29/20)

   a) CITY021389-21402 – PPD Directive 151 – Interview and Interrogations (1/14/14)

29. PLAINTIFF22144-22152 – PPD Directive 7.16 – Department Directives Program (7/9/15)

30. PLAINTIFF02181-02205 – PPD Directive 5.23

31. PLAINTIFF02206-02215 – PPD Directive 5.22

32. PLAINTIFF17873-17887 – PPD Directive 8.6

33. PLAINTIFF22092-22096 – PPD Directive 7.11 – Records Retention

34. PLAINTIFF22097-22119 – PPD Directive 10.2 – Use of Force

35. CITY004346 – Retention Policy

36. PLAINTIFF22012-22091 – US Department of Justice – Standards and Guidelines for Internal Affairs – Recommendations from a Community of Practice

**PPD Training**

1. CITY004421-4522 - Course #99-315 Officer Safety Awareness IX (10/21/98)

2. CITY004786-4904 - Section IV Laws and Procedures – Search and Seizure (6/1/00)

3. CITY004905-4968 - Section IV Laws and Procedures – Criminal Procedures and Laws of Arrest (6/1/00)

4. CITY004969-5021 - Section IV Laws and Procedures – Criminal Procedures and Laws of Arrest 2 (6/1/00)

2

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

5.  CITY004706-4722 - Section IX
    Principles of Criminal Investigation -
    Crimes Against People (6/1/00)

6.  CITY004723-4785 - Section IX
    Principles of Criminal Investigation
    – Interviewing and Interrogation
    Techniques and Skills (6/1/00)

7.  CITY004523-4529 - Section XVIII
    Handling Arrested Persons –
    Booking and Lockup (6/1/00)

8.  CITY004530-4554 - Section XVIII
    Handling Arrested Persons –
    Transporting Prisoners (6/1/00)

9.  CITY004347-4420 - Legal Update
    Course #04-201 (12/1/03)

10. CITY004555-4705 - Section XI
    Crisis Management – Recognizing
    Special Needs (7/13/05)

11. CITY005022-5083 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Pre-Patrol and
    Routine Patrol Procedures

12. CITY005084-5209 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Patrol Activities
    and Incidents

13. CITY005210-5225 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Surveillance

14. CITY005226-5239 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Area Searches

15. CITY005240-5259 - Basic Training
    Curriculum for Pennsylvania Police

Patrol Officers – In-depth
Investigations

16. CITY005260-5276 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Processing
    Evidence

17. CITY005277-5302 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Interviewing and
    Interrogation

18. CITY005303-5333 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Preliminary
    Investigations

19. CITY005334-5352 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers –Investigations

20. CITY005353-5400 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Evidence

21. CITY005401-5521 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Criminal Procedure

22. CITY005522-5580 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Criminal Procedure
    2

23. CITY005581-5602 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Authority and
    Jurisdiction

24. CITY005603-5636 - Basic Training
    Curriculum for Pennsylvania Police
    Patrol Officers – Civil Law

3

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

25.
CITY005637-5646 - Basic Training Curriculum for Pennsylvania Police Patrol Officers – Civil Law 2

26.
CITY005747-5760 - Basic Training Curriculum – Constitutional Law – Section 4B

27.
CITY005892-5905 - Basic Training Curriculum – Constitutional Law – Section 4B

28.
CITY005761-5821 - Basic Training Curriculum – Criminal Procedure– Section 4D

29.
CITY006045-6105 - Basic Training Curriculum – Criminal Procedure– Section 4D

30.
CITY005822-5874 - Basic Training Curriculum – Search and Seizure – Section 4E

31.
CITY005906-5958 - Basic Training Curriculum – Search and Seizure – Section 4E

32.
CITY005647-5697 - Basic Training Curriculum – Interviewing and Interrogation Techniques and Skills - Section 9C

33.
CITY005959-6009 - Basic Training Curriculum – Interviewing and Interrogation Techniques and Skills - Section 9C

34.
CITY006150-6200 - Basic Training Curriculum – Interviewing and Interrogation Techniques and Skills - Section 9C

35.
CITY005698-5732 - Basic Training Curriculum – Identifying, Collecting and Processing Evidence – Section 9D

36.
CITY006010-6044 - Basic Training Curriculum – Identifying, Collecting and Processing Evidence – Section 9D

37.
CITY005733-5746 - Basic Training Curriculum – Crimes Against People – Section 9F

38.
CITY006106-6119 - Basic Training Curriculum – Crimes Against People – Section 9F

39.
CITY005875-5891 - Basic Training Curriculum – Case Preparation – Section 9N

40.
CITY006133-6149 - Basic Training Curriculum – Case Preparation – Section 9N

41.
CITY006120-6132 - Instructor Cues and Performance Objectives – Civil and Criminal Liability

**Homicide Fine of Mr. Outlaw**

1.
CITY000001-669

a) Activity Sheets (CITY000053; 109-112; 104; 88; 83; 474; 476-77; 480-85; 7; 105; 117-18)

b) Affidavit of Probable Cause (CITY000340-346)

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

c) Affidavit of Probable Cause (DAO 00291-93)

d) Affidavit of Probable Cause (CITY000359-366)

e) Affidavit of Probable Cause (DAO 00282-84)

f) Affidavit of Probable Cause (DAO 00944-46)

g) Warrant of Arrest/Arrest Report (9/3/03) (CITY000348; 371; 373; 349-51)

h) Arrest Report (DAO 00699-700)

i) Police Notes (CITY000099; 332-33; 486; 512; 602-23; 50)

2. PH HAMU00001-32 - House Arrest Records

3. APPEAL FILE 00340-415 – Pennsylvania Innocence Project - Investigative Report

**Court Transcripts of Mr. Outlaw**

1. CITY001006-1029 - Preliminary Hearing (10/29/2003)

2. CITY000670-917 - Trial

a) December 15, 2004 (CITY000670-694)

b) December 16, 2004 (CITY000695-757)

c) December 17, 2004 (CITY000758-787)

d) December 20, 2004 (CITY000788-865)

e) December 21, 2004 (CITY000866-917)

3. CITY003484-3486 - Sentencing (3/24/05)

4. CITY000918-935 - Hearing (11/24/14)

5. CITY003002-3005 - Hearing (5/12/15)

6. CITY003006-3071 - PCRA Hearing

a) November 15, 2018 (CITY003006-3049)

b) November 16, 2018 (CITY003050-3071)

7. CITY002988-3001 - PCRA Hearing (1/25/19)

8. PLAINTIFF22153-22157 – Hearing Transcript on Motion for Nolle Pros (12/20/20)

**Court Filings of Mr. Outlaw**

1. CITY003195-3210 – Opinion (10/19/05)

2. CITY001938-1942 – Memorandum (5/17/06)

3. CITY002656-2671 – Memorandum (2/20/07)

4. CITY002642-2655 – Opinion (1/20/10)

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

5.  CITY001943-1952 – Memorandum (12/2/10)

6.  CITY001419-1444 – Report and Recommendation (4/10/13)

7.  CITY001717-1724 – Report and Recommendation (11/25/14)

8.  CITY002673-2675 – Opinion (12/31/15)

9.  CITY002708-2716 – Memorandum (5/2/17)

10.  CITY001953-2655 – Second Amended Petition for PCRA (7/6/18)

11.  CITY002581-2591 – Memorandum in Support of Motion for *Nolle Prosequi* (12/18/20)

12.  Orders

 a)  September 16, 2019 (CITY002691)

 b)  November 8, 2019 (CITY002693)

 c)  November 27, 2019 (CITY002694)

 d)  February 12, 2020 (CITY002682)

 e)  February 2, 2021 (CITY1799)

 f)  CITY002704 – Order granting Motion for *Nolle Prosequi* (12/29/20)

13.  Motion to Compel – Defendant Certification (2/9/22)

14.  Motion to Compel – Court Order (1/31/22)

**Depositions Transcripts & Attachments**

1.  Donald Outlaw (7/26/22)

2.  Derrick Alston (06/21/22)

3.  Patricia Cummings (1/27/22)

4.  Monique Outlaw (7/22/22)

5.  Detective John Harkins (3/3/22)

6.  Howard Peterman (3/12/22)

7.  Jeffrey Piree (3/10/22)

8.  Charles Paladino Hearing and Deposition (3/31/22 & 4/5/22 09/7-9, 2022)

9.  John McNamee (4/19/22)

10. Lee Datts (4/19/22)

11. Shelby Green (5/18/22)

12. Francis Healy (8/9/22)

13. Mark Deegan (8/23/22)

14. Charles Boyle (08/17/22)

15. Monique Outlaw (7/22/22)

**PPD & Detectives History**

1.  Piree

 a)  CITY003727-3729 - Concise Officer History

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

   b) PLAINTIFF22929-23293 -
      Complaints Against Piree and
      News Article

2. Peterman

   a) CITY003723-3726 - Concise
      Officer History

   b) CITY003730-4185 - Personnel
      File

   c) CITY011142-13284 - IAD Files

   d) PLAINTIFF22721-22928 -
      Complaints Against Peterman

3. Website – About the Department

4. Website – Complaint spreadsheet

5. PLAINTIFF01300-01357 - Philadelphia
   District Attorney's Office press releases

6. PLAINTIFF22277-22694 - News
   Articles

7. PLAINTIFF23294-26890 - Complaints
   Against Pitts and News Articles

**Statements & Certifications**

1. Jamal Kelly (09/04/00)

2. Officer Lee Datts (09/04/00)

3. Derrick Alston (09/04/00, 10/30/00)

4. Cynthia Kelly-Note (09/18/00)

5. Llamar Rodgers (03/29/02)

6. Katima Jackson

7. Anthony Brisbon (10/27/00)

8. Charles Paladino (06/26/01)

9. Eric Lee (08/19/03)

**Affidavits, Letters & Reports**

1. CITY000313, 305-306 - Statement -
   Police Officer Lee Datts (9/23/00)

2. CITY000572-574 - PPD Investigation
   Interview - Shelby Green (9/4/00)

3. CITY000525-526 - PPD Investigation
   Report - Derrick Alston (9/4/00)

4. CITY000299-300 - PPD Investigation
   Report - Ritter (handwritten) (10/5/00)

5. CITY000301-302 - PPD Investigation
   Interview Record (handwritten)
   (10/5/00)

6. CITY000540-545; 538; 586; 571; 565-
   567; 258; 271 - PPD Statement - Derrick
   Alston (10/30/00)

7. CITY000023-26; 28; 30-36 - PPD
   Investigation Interview Record -
   Anthony Brisbon (11/27/00)

8. CITY000001-6; 534 - PPD Investigation
   Interview Record (handwritten) -
   Charles Paladino (5/15/01)

9. CITY000008-13; 527-531; 533 - PPD
   Investigation Interview Record
   (handwritten) - Charles Paladino
   (6/26/01)

10. CITY000495-496; 499 - PPD
    Investigation Interview Record - Ruth
    Mills (10/23/01)

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

11. CITY000014-16; 665; 653-654 - PPD Investigation Interview Record – Charles Paladino (10/24/01)

12. CITY000490-494; 497 - PPD Investigation Interview Record - Lamar Rodgers (3/29/02)

13. CITY000272; 513-518; 273 - PPD Investigation Interview Record - Derrick Alston (7/9/03)

14. CITY000521-524; 319; 142; 162-165 - PPD Investigation Interview Record - Eric Lee (8/19/03)

15. CITY002120 - Affidavit - Mark Greenberg to Outlaw (2/14/04)

16. RO (CIU) 000003 - ADA Conroy - letter to Elsa Legesse (5/21/04)

17. RO (CIU) 000037; 39 - Palladino letter to Conroy (8/11/04)

18. RO (CIU) 000041; 44; 42-43 - Palladino to Outlaw (9/20/04)

19. CITY000601; 599-600 - Palladino to Detective Peterman (9/20/04)

20. RO (CIU) 000004 - ADA Conroy-letter to Deputy Commissioner (11/24/04)

21. CITY002743; 2744 - Statement - Sydney Starr (1/3/06)

22. CITY002838 - Affidavit - Annette Outlaw (9/12/07)

23. CITY002121-2122 - Affidavit - Wesley Harmon (11/24/07)

24. CITY002091-2092 - Affidavit - Katima Jackson (9/7/13)

25. CITY002093 - Affidavit - Robert Outlaw (9/12/13)

26. DAO 02629 - Affidavit - Robert Outlaw (9/26/13)

27. RO (CIU) 000045-48 - Palladino letter to "Nikki" (1/2/14)

28. CITY002042 - Affidavit - Robert Outlaw (10/9/14)

29. CITY002037-2038 - Affidavit - Chris Holder (10/2/14)

30. CITY002040 - Affidavit - Monique Solomon (10/6/14)

31. CITY002954-2958 - Letter - Charles Paladino (1/5/15)

32. CITY002916 - Letter - Monique Solomon (1/7/15)

33. CITY002897 - Affidavit - Lamar Rodgers (1/8/15)

34. CITY002899 - Affidavit - Robert Outlaw (1/22/15)

35. PLAINTIFF00079-80 - Affidavit – Charles Paladino (1/27/15)

36. CITY002911; 2917 - Affidavit - Wesley Harmon (1/21/15) - Given by Monique Solomon (1/29/15)

37. CITY002951 - Affidavit - Robert Outlaw (2/6/15)

38. CITY002953 - Affidavit - Monique Solomon (2/6/15)

8

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

39. CITY002915 - Affidavit - Monique Solomon (2/14/15)

40. CITY002913 - Affidavit - Robert Outlaw (2/28/15)

41. DAO 02972 - Certification - Katima Jackson (3/19/18)

42. CITY002098 - Certification - Charles Paladino (4/5/18)

43. DAO 03145 - Certification - Eric Lee (4/6/18)

44. CITY002096 - Memo to Foster from Leah Berney - Phone Conference with Pop (4/27/18)

45. RO (CIU) 000202-205 - Notes - Paladino (6/5/19)

46. PLAINTIFF17809-17810 - Christopher Holder Interview – PA Innocence Project

**Other Cases**

1. SHAURN THOMAS

   a) PLAINTIFF12479-12509 – *Thomas v. City of Philadelphia* – McCauley Report (1/14/19)

   b) PLAINTIFF12510-12511 – *Thomas v. City of Philadelphia* – McCauley Report (3/1/19)

   c) PLAINTIFF12097-12168 – *Thomas v. City of Philadelphia* – Devlin Transcript

   d) PLAINTIFF12409-12478 – *Thomas v. City of Philadelphia* – Worrell Transcript

   e) PLAINTIFF12224-12256 – *Thomas v. City of Philadelphia* – Nodiff Transcript

   f) PLAINTIFF22158-22207 – *Thomas v. City of Philadelphia* - Memorandum and Opinion on Motion for Summary Judgment

2. NAACP

   a) PLAINTIFF01360-02175 – NAACP Documents

3. WRIGHT

   a) PLAINTIFF12580-12773 – *Wright v. City of Philadelphia* – Nodiff Transcript

   b) PLAINTIFF22208-22213 – *Wright v. City of Philadelphia* – Memorandum and Opinion on Motion to Compel

4. GILYARD

   a) PLAINTIFF12512-12538 – *Gilyard v. City of Philadelphia* – Dusak Transcript

   b) PLAINTIFF17839-17872 – *Gilyard v. City of Philadelphia* – Healy Transcript

   c) PLAINTIFF22214-22225 – *Gilyard v. City of Philadelphia* – Memorandum and Opinion on Motion for Judgment on the Pleadings

   d) PLAINTIFF22226-22272 – *Gilyard v. City of Philadelphia* –

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

Memorandum and Opinion on
Motion for Summary Judgment

5. NORDO

    a) PLAINTIFF12774-12808 –
    Nordo Grand Jury Presentment

    b) PLAINTIFF22120-22143 –
    Nordo Article

6. Exoneree Chart

7. THORPE

    a) PLAINTIFF20097-20298 –
    *Commonwealth v. Thorpe* – PCRA
    Transcript (6/19/21)

**Additional Discovery Exchanged[1]**

1. PLAINTIFF 01360-02175.pdf
2. CITY002581 - CITY002591.pdf
3. CITY002704.pdf
4. Motion for Nolle Prosequi.pdf
5. OneDrive_1_6-3-2022
6. PLAINTIFF22012-PLAINTIFF22091.pdf
7. PLAINTIFF22092-PLAINTIFF22096.pdf
8. PLAINTIFF22097-PLAINTIFF22119.pdf
9. PLAINTIFF22120-PLAINTIFF22124.pdf
10. PLAINTIFF22144-PLAINTIFF22152.pdf
11. PLAINTIFF22158-PLAINTIFF22207.pdf
12. PLAINTIFF22208-PLAINTIFF22213.pdf
13. PLAINTIFF22214-PLAINTIFF22225.pdf
14. PLAINTIFF22226-PLAINTIFF22272.pdf
15. Activity Sheets.pdf
16. Affidavit of Probable Cause 1 CITY000340-346.pdf
17. Affidavit of Probable Cause 2 DAO 00291-293.pdf
18. Affidavit of Probable Cause 3 CITY000359-366.pdf
19. Affidavit of Probable Cause 4 DAO 00282-284.pdf
20. Affidavit of Probable Cause 5 DAO 00944-946.pdf
21. Appeal File 00340-00415.pdf
22. Arrest Report DAO 00699-700.pdf
23. HOMICIDE FILE CITY000001 - CITY000669.pdf.pdf
24. House Arrest PH HAMU00001 - PH
    HAMU00032.pdf.pdf
25. Police Notes.pdf
27. Warrant of Arrest - Arrest Report.pdf
28. PLAINTIFF23294-PLAINTIFF23300.pdf
29. PLAINTIFF23301-PLAINTIFF23305.pdf
30. PLAINTIFF23306-PLAINTIFF23320.pdf
31. PLAINTIFF23321-PLAINTIFF23337.pdf
32. PLAINTIFF23338-PLAINTIFF23340.pdf
33. PLAINTIFF23341-PLAINTIFF23377.pdf
34. PLAINTIFF23378-PLAINTIFF23391.pdf
35. PLAINTIFF23392-PLAINTIFF23402.pdf
36. PLAINTIFF23403-PLAINTIFF23434.pdf
37. PLAINTIFF23435-PLAINTIFF23470.pdf
38. PLAINTIFF23471-PLAINTIFF23488.pdf
39. PLAINTIFF23489-PLAINTIFF23512.pdf
40. PLAINTIFF23513-PLAINTIFF23524.pdf
41. PLAINTIFF23525-PLAINTIFF23544.pdf
42. PLAINTIFF23545-PLAINTIFF23557.pdf
43. PLAINTIFF23558-PLAINTIFF23573.pdf
44. PLAINTIFF23574-PLAINTIFF23588.pdf
45. PLAINTIFF23589-PLAINTIFF23613.pdf
46. PLAINTIFF23614-PLAINTIFF23616.pdf
47. PLAINTIFF23617-PLAINTIFF23631.pdf
48. PLAINTIFF23632-PLAINTIFF23647.pdf
49. PLAINTIFF23648-PLAINTIFF23665.pdf
50. PLAINTIFF23666-PLAINTIFF23673.pdf
51. PLAINTIFF23674-PLAINTIFF23685.pdf
52. PLAINTIFF23686-PLAINTIFF23696.pdf
53. PLAINTIFF23697-PLAINTIFF23710.pdf

---

[1] Some of these documents are contained within
other listings.

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

54. PLAINTIFF23711-PLAINTIFF23715.pdf
55. PLAINTIFF23716-PLAINTIFF23716.pdf
56. PLAINTIFF23717-PLAINTIFF23733.pdf
57. PLAINTIFF23734-PLAINTIFF23745.pdf
58. PLAINTIFF23746-PLAINTIFF23749.pdf
59. PLAINTIFF23750-PLAINTIFF23765.pdf
60. PLAINTIFF23766-PLAINTIFF23777.pdf
61. PLAINTIFF23778-PLAINTIFF23778.pdf
62. PLAINTIFF23779-PLAINTIFF23785.pdf
63. PLAINTIFF23786-PLAINTIFF23817.pdf
64. PLAINTIFF23818-PLAINTIFF23884.pdf
65. PLAINTIFF23885-PLAINTIFF23888.pdf
66. PLAINTIFF23889-PLAINTIFF23891.pdf
67. PLAINTIFF23892-PLAINTIFF23893.pdf
68. PLAINTIFF23894-PLAINTIFF23896.pdf
69. PLAINTIFF23897-PLAINTIFF23936.pdf
70. PLAINTIFF23937-PLAINTIFF23954.pdf
71. PLAINTIFF23955-PLAINTIFF23959.pdf
72. PLAINTIFF23960-PLAINTIFF24100.pdf
73. PLAINTIFF24101-PLAINTIFF24115.pdf
74. PLAINTIFF24116-PLAINTIFF24125.pdf
75. PLAINTIFF24126-PLAINTIFF24132.pdf
76. PLAINTIFF24133-PLAINTIFF24140.pdf
77. PLAINTIFF24141-PLAINTIFF24152.pdf
78. PLAINTIFF24153-PLAINTIFF24153.pdf
79. PLAINTIFF24154-PLAINTIFF24160.pdf
80. PLAINTIFF24161-PLAINTIFF24292.pdf
81. PLAINTIFF24293-PLAINTIFF24299.pdf
82. PLAINTIFF24300-PLAINTIFF24314.pdf
83. PLAINTIFF24315-PLAINTIFF24348.pdf
84. PLAINTIFF24349-PLAINTIFF24375.pdf
85. PLAINTIFF24376-PLAINTIFF24381.pdf
86. PLAINTIFF24382-PLAINTIFF24414.pdf
87. PLAINTIFF24415-PLAINTIFF24424.pdf
88. PLAINTIFF24425-PLAINTIFF24432.pdf
89. PLAINTIFF24433-PLAINTIFF24452.pdf
90. PLAINTIFF24453-PLAINTIFF24462.pdf
91. PLAINTIFF24463-PLAINTIFF24538.pdf
92. PLAINTIFF24539-PLAINTIFF24552.pdf

93. PLAINTIFF24553-PLAINTIFF24619.pdf
94. PLAINTIFF24620-PLAINTIFF24653.pdf
95. PLAINTIFF24654-PLAINTIFF24654.pdf
96. PLAINTIFF24655-PLAINTIFF24666.pdf
97. PLAINTIFF24667-PLAINTIFF24679.pdf
98. PLAINTIFF24680-PLAINTIFF24682.pdf
99. PLAINTIFF24683-PLAINTIFF24705.pdf
100. PLAINTIFF24706-PLAINTIFF24724.pdf
101. PLAINTIFF24725-PLAINTIFF24773.pdf
102. PLAINTIFF24774-PLAINTIFF24781.pdf
103. PLAINTIFF24782-PLAINTIFF24796.pdf
104. PLAINTIFF24797-PLAINTIFF24804.pdf
105. PLAINTIFF24805-PLAINTIFF24932.pdf
106. PLAINTIFF24933-PLAINTIFF24968.pdf
107. PLAINTIFF24969-PLAINTIFF24985.pdf
108. PLAINTIFF24986-PLAINTIFF24986.pdf
109. PLAINTIFF24987-PLAINTIFF24990.pdf
110. PLAINTIFF24991-PLAINTIFF25192.pdf
111. PLAINTIFF25193-PLAINTIFF25394.pdf
112. PLAINTIFF25395-PLAINTIFF25395.pdf
113. PLAINTIFF25396-PLAINTIFF25396.pdf
114. PLAINTIFF25397-PLAINTIFF25598.pdf
115. PLAINTIFF25599-PLAINTIFF25800.pdf
116. PLAINTIFF25801-PLAINTIFF25801.pdf
117. PLAINTIFF25802-PLAINTIFF25802.pdf
118. PLAINTIFF25803-PLAINTIFF25838.pdf
119. PLAINTIFF25839-PLAINTIFF25839.pdf
120. PLAINTIFF25840-PLAINTIFF25887.pdf
121. PLAINTIFF25888-PLAINTIFF25929.pdf
122. PLAINTIFF25930-PLAINTIFF25935.pdf
123. PLAINTIFF25936-PLAINTIFF25939.pdf
124. PLAINTIFF25940-PLAINTIFF26285.pdf
125. PLAINTIFF26286-PLAINTIFF26296.pdf
126. PLAINTIFF26297-PLAINTIFF26302.pdf
127. PLAINTIFF26303-PLAINTIFF26317.pdf
128. PLAINTIFF26318-PLAINTIFF26506.pdf
129. PLAINTIFF26507-PLAINTIFF26591.pdf
130. PLAINTIFF26592-PLAINTIFF26601.pdf
131. PLAINTIFF26602-PLAINTIFF26627.pdf

Outlaw v. City of Philadelphia, et al.
USDC- Eastern District of Pennsylvania
Dr. Chapman: Expert Report

132. PLAINTIFF26628-PLAINTIFF26708.pdf
133. PLAINTIFF26709-PLAINTIFF26714.pdf
134. PLAINTIFF26715-PLAINTIFF26853.pdf
135. PLAINTIFF26854-PLAINTIFF26883.pdf
136. PLAINTIFF26884-PLAINTIFF26890.pdf
137. PLAINTIFF 01300-01357.pdf
138. PLAINTIFF22277-PLAINTIFF22281.pdf
139. PLAINTIFF22282-PLAINTIFF22286.pdf
140. PLAINTIFF22287-PLAINTIFF22290.pdf
141. PLAINTIFF22291-PLAINTIFF22294.pdf
142. PLAINTIFF22295-PLAINTIFF22296.pdf
143. PLAINTIFF22297-PLAINTIFF22484.pdf
144. PLAINTIFF22485-PLAINTIFF22491.pdf
145. PLAINTIFF22492-PLAINTIFF22497.pdf
146. PLAINTIFF22498-PLAINTIFF22506.pdf
147. PLAINTIFF22507-PLAINTIFF22529.pdf
148. PLAINTIFF22530-PLAINTIFF22536.pdf
149. PLAINTIFF22537-PLAINTIFF22539.pdf
150. PLAINTIFF22540-PLAINTIFF22543.pdf
151. PLAINTIFF22544-PLAINTIFF22570.pdf
152. PLAINTIFF22571-PLAINTIFF22573.pdf
153. PLAINTIFF22574-PLAINTIFF22576.pdf
154. PLAINTIFF22577-PLAINTIFF22579.pdf
155. PLAINTIFF22580-PLAINTIFF22584.pdf
156. PLAINTIFF22585-PLAINTIFF22604.pdf
157. PLAINTIFF22605-PLAINTIFF22609.pdf
158. PLAINTIFF22610-PLAINTIFF22617.pdf
159. PLAINTIFF22618-PLAINTIFF22630.pdf
160. PLAINTIFF22631-PLAINTIFF22634.pdf
161. PLAINTIFF22635-PLAINTIFF22642.pdf
162. PLAINTIFF22643-PLAINTIFF22645.pdf
163. PLAINTIFF22646-PLAINTIFF22650.pdf
164. PLAINTIFF22651-PLAINTIFF22655.pdf
165. PLAINTIFF22656-PLAINTIFF22659.pdf
166. PLAINTIFF22660-PLAINTIFF22679.pdf
167. PLAINTIFF22680-PLAINTIFF22683.pdf
168. PLAINTIFF22684-PLAINTIFF22694.pdf
169. PLAINTIFF 12097-12168.pdf
170. PLAINTIFF 12224-12256.pdf

171. PLAINTIFF 12409-12478.pdf
172. PLAINTIFF 12479-12509.pdf
173. PLAINTIFF 12510-12511.pdf
174. PLAINTIFF 12512-12538.pdf
175. PLAINTIFF 12580-12773.pdf
176. PLAINTIFF 12774-12808.pdf
177. PLAINTIFF 17839-17872.pdf
178. CITY011142-CITY011177.pdf
179. CITY011178-CITY011374.pdf
180. CITY011375-CITY011672.pdf
181. CITY011673-CITY011972.pdf
182. CITY011973-CITY012322.pdf
183. CITY012323-CITY012680.pdf
184. CITY012681-CITY012766.pdf
185. CITY012767-CITY012813.pdf
186. CITY012814-CITY012872.pdf
187. CITY012873-CITY012960.pdf
188. CITY012961-CITY013173.pdf
189. CITY013174-CITY013238.pdf
190. CITY013239-CITY013276.pdf
191. CITY013277-CITY013284.pdf
192. Concise Officer History CITY003723-CITY003726.pdf
193. Personnel File CITY003723-CITY003726.pdf
194. Personnel File CITY003730-CITY003771.pdf
195. Personnel File CITY003772-CITY004060.pdf
196. Personnel File CITY004061-CITY004085.pdf
197. Personnel File CITY004086-CITY004185.pdf

# EXHIBIT C

| | |
|---|---|
| **From:** | Danielle Rosenthal |
| **To:** | Julia Ronnebaum; Joshua VanNaarden |
| **Cc:** | Katelyn Mays; Valerie Wilus |
| **Subject:** | Re: Outlaw v. City of Philadelphia et al. |
| **Date:** | Monday, September 19, 2022 9:33:09 PM |
| **Attachments:** | 2021-09-19 Draft Stipulation.docx |
| | Michelle Joy CV[1].pdf |

Julia –

Please see the attached proposed stipulation and CV. When can we expect an answer as to whether this is agreeable to you or whether you have edits to the proposed protocol?

Danielle

---

**From:** Julia Ronnebaum <jronnebaum@VSCPLAW.Com>
**Date:** Monday, September 19, 2022 at 4:35 PM
**To:** Danielle Rosenthal <Danielle.Rosenthal@phila.gov>, Joshua VanNaarden <JVanNaarden@vscplaw.com>
**Cc:** Katelyn Mays <Katelyn.Mays@phila.gov>, Valerie Wilus <VWilus@vscplaw.com>
**Subject:** RE: Outlaw v. City of Philadelphia et al.

> **External Email Notice. This email comes from outside of City government. Do not click on links or open attachments unless you recognize the sender.**

Danielle, I am happy to dive into a legal analysis on the issue of good cause, but I think we can save both of us some time if you simply provide us with the details that we have repeatedly requested today regarding the DME that your clients seek. Although we maintain that good cause to conduct a fact-finding medical examination does not exist, we have also maintained an openness to considering a stipulation to a DME, in the interest of keeping things on track, depending upon the contemplated scope. However, we cannot take any further position until you provide us with that information. If the scope (i.e. the Rule 35(a)(1)(B) details)  is outlined in a drafted stipulation, please send to us for review. If you'd rather send the information via email, that works too.  In light of your request to conduct this DME this Friday, we also need details about logistics (location vs. zoom, etc.) so that we may determine whether this is workable.

Thank you,

Julia Huxman Ronnebaum, Esq.
*Associate*

Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103
office 215.960.0000  direct 215.960.0388  fax 215.960.0384
jronnebaum@vscplaw.com

www.vscplaw.com

*\*\*\*While our lawyers and staff will be working from our physical office location, all communications and pleadings in cases should be sent via e-mail.*

This email is from the law firm VSCP LAW and may contain legally privileged or confidential information, and is intended only for the recipient identified above as the addressee. If you are not the addressee, or if this message has been sent to you in error, you are not authorized to read, copy, or distribute this message and any attachments, and you must delete this message and attachments and immediately notify the sender by return e-mail.  Delivery of this message and any attachments to any person other than the intended recipient(s) and is not intended in any way to waive confidentiality or any legal privilege. Nothing in this email should be construed as creating an attorney-client relationship or providing legal advice unless you are a current client of VSCP LAW.

**From:** Danielle Rosenthal <Danielle.Rosenthal@phila.gov>
**Sent:** Monday, September 19, 2022 12:59 PM
**To:** Julia Ronnebaum <jronnebaum@VSCPLAW.Com>; Joshua VanNaarden <JVanNaarden@vscplaw.com>
**Cc:** Katelyn Mays <Katelyn.Mays@phila.gov>; Valerie Wilus <VWilus@vscplaw.com>
**Subject:** Re: Outlaw v. City of Philadelphia et al.

Thanks, Julia.

Is this the attached the opinion to which you refer?  I would note that this case is readily distinguishable, including because a party waited until *after* the close of expert discovery and the filing of dispositive motions to move to compel.  Further, it is noteworthy that the Court found "disappointing Plaintiff's counsel's failure, at a minimum, to mention that Plaintiff had undergone an IME and the expert report would be forthcoming." Hansen v. Speedway, No. CV 19-3174-KSM, 2021 WL 254555, at *3 (E.D. Pa. Jan. 26, 2021).

It is unclear to us how it is that you are asserting that the production of an IME report falls within the scope of expert discovery (and thus is governed by expert discovery disclosure rules) for purposes of Plaintiff's disclosures, while simultaneously asserting that Defendants' examination and production of such a report should have taken place during the fact-discovery period. I am happy to provide you with a stipulation if you are not refusing to produce your client for an examination this Friday.  That said, I do not see the point of doing so if you are simply going to require the filing of a motion to compel regardless, and the request is simply to divert resources away from filing that motion.  Please advise.

Danielle

**From:** Julia Ronnebaum <jronnebaum@VSCPLAW.Com>
**Date:** Monday, September 19, 2022 at 12:49 PM
**To:** Danielle Rosenthal <Danielle.Rosenthal@phila.gov>, Joshua VanNaarden <JVanNaarden@vscplaw.com>
**Cc:** Katelyn Mays <Katelyn.Mays@phila.gov>, Valerie Wilus <VWilus@vscplaw.com>
**Subject:** RE: Outlaw v. City of Philadelphia et al.

**External Email Notice. This email comes from outside of City government. Do not click on links or open attachments unless you recognize the sender.**

Sorry, Danielle, I am in back-to-back-to-back zoom calls from 11 – 3 today, but please see Judge Marston's opinion in *Hansen v. Speedway et al*, from 2021, which also relies upon other cases within

the 3rd Circuit.

## Julia Huxman Ronnebaum, Esq.
*Associate*

Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103
office 215.960.0000   direct 215.960.0388   fax 215.960.0384
jronnebaum@vscplaw.com
www.vscplaw.com
*\*\*\*While our lawyers and staff will be working from our physical office location, all communications and pleadings in cases should be sent via e-mail.*

This email is from the law firm VSCP LAW and may contain legally privileged or confidential information, and is intended only for the recipient identified above as the addressee. If you are not the addressee, or if this message has been sent to you in error, you are not authorized to read, copy, or distribute this message and any attachments, and you must delete this message and attachments and immediately notify the sender by return e-mail.  Delivery of this message and any attachments to any person other than the intended recipient(s) and is not intended in any way to waive confidentiality or any legal privilege. Nothing in this email should be construed as creating an attorney-client relationship or providing legal advice unless you are a current client of VSCP LAW.

**From:** Danielle Rosenthal <Danielle.Rosenthal@phila.gov>
**Sent:** Monday, September 19, 2022 11:17 AM
**To:** Julia Ronnebaum <jronnebaum@VSCPLAW.Com>; Joshua VanNaarden <JVanNaarden@vscplaw.com>
**Cc:** Katelyn Mays <Katelyn.Mays@phila.gov>; Valerie Wilus <VWilus@vscplaw.com>
**Subject:** Re: Outlaw v. City of Philadelphia et al.

Julia -

Can you please send the case law to which you refer?

Danielle

**From:** Julia Ronnebaum <jronnebaum@VSCPLAW.Com>
**Date:** Monday, September 19, 2022 at 10:23 AM
**To:** Danielle Rosenthal <Danielle.Rosenthal@phila.gov>, Joshua VanNaarden <JVanNaarden@vscplaw.com>
**Cc:** Katelyn Mays <Katelyn.Mays@phila.gov>, Valerie Wilus <VWilus@vscplaw.com>
**Subject:** RE: Outlaw v. City of Philadelphia et al.

> **External Email Notice. This email comes from outside of City government. Do not click on links or open attachments unless you recognize the sender.**

Danielle,

We do disagree that good cause exists to seek, after the close of Discovery, to conduct a fact-finding examination about Plaintiff's psychological condition which has been a damage known to

Defendants since the filing of the Complaint. Prior opinions in the ED PA would support our position. Either way, you are required to provide us the details we asked for (see Rule 35(a)(2)(B)). And we again ask that you kindly provide the required information so that we can consider how we wish to proceed with your request for a stipulation.

Thanks,

Julia Huxman Ronnebaum, Esq.
*Associate*


Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103
office 215.960.0000  direct 215.960.0388 fax 215.960.0384
jronnebaum@vscplaw.com
www.vscplaw.com
*\*\*\*While our lawyers and staff will be working from our physical office location, all communications and pleadings in cases should be sent via e-mail.*

This email is from the law firm VSCP LAW and may contain legally privileged or confidential information, and is intended only for the recipient identified above as the addressee. If you are not the addressee, or if this message has been sent to you in error, you are not authorized to read, copy, or distribute this message and any attachments, and you must delete this message and attachments and immediately notify the sender by return e-mail.  Delivery of this message and any attachments to any person other than the intended recipient(s) and is not intended in any way to waive confidentiality or any legal privilege. Nothing in this email should be construed as creating an attorney-client relationship or providing legal advice unless you are a current client of VSCP LAW.

---

**From:** Danielle Rosenthal <Danielle.Rosenthal@phila.gov>
**Sent:** Monday, September 19, 2022 9:47 AM
**To:** Julia Ronnebaum <jronnebaum@VSCPLAW.Com>; Joshua VanNaarden <JVanNaarden@vscplaw.com>
**Cc:** Katelyn Mays <Katelyn.Mays@phila.gov>; Valerie Wilus <VWilus@vscplaw.com>
**Subject:** Re: Outlaw v. City of Philadelphia et al.

Julia —

The Court's order contemplates rebuttal reports, and this is within the scope of both a rebuttal and the Court's scheduling order.  If you do not believe this constitutes good cause, we are comfortable approaching the Court.

Danielle

---

**From:** Julia Ronnebaum <jronnebaum@VSCPLAW.Com>
**Date:** Monday, September 19, 2022 at 8:57 AM
**To:** Danielle Rosenthal <Danielle.Rosenthal@phila.gov>, Joshua VanNaarden <JVanNaarden@vscplaw.com>
**Cc:** Katelyn Mays <Katelyn.Mays@phila.gov>, Valerie Wilus <VWilus@vscplaw.com>
**Subject:** RE: Outlaw v. City of Philadelphia et al.

**External Email Notice. This email comes from outside of City government. Do not click on links or open attachments unless you recognize the sender.**

Danielle,

Please provide details in support of good cause for Defendant's request of this examination of Plaintiff now, for the first time, after the close of discovery and three months after the deposition of his treating therapist.

Assuming that you can provide good cause, and in effort to expedite this conversation, please also provide us with the details you contemplate including in the stipulation. Specifically, the location of the exam, individuals to attend the exam, the name of the examiner, and the scope of the exam, so that we may review and determine whether we can agree.

Thank you,

Julia Huxman Ronnebaum, Esq.
*Associate*

Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103
office 215.960.0000  direct 215.960.0388  fax 215.960.0384
jronnebaum@vscplaw.com
www.vscplaw.com
*\*\*\*While our lawyers and staff will be working from our physical office location, all communications and pleadings in cases should be sent via e-mail.*

This email is from the law firm VSCP LAW and may contain legally privileged or confidential information, and is intended only for the recipient identified above as the addressee. If you are not the addressee, or if this message has been sent to you in error, you are not authorized to read, copy, or distribute this message and any attachments, and you must delete this message and attachments and immediately notify the sender by return e-mail.  Delivery of this message and any attachments to any person other than the intended recipient(s) and is not intended in any way to waive confidentiality or any legal privilege. Nothing in this email should be construed as creating an attorney-client relationship or providing legal advice unless you are a current client of VSCP LAW.

---

**From:** Danielle Rosenthal <Danielle.Rosenthal@phila.gov>
**Sent:** Saturday, September 17, 2022 11:10 AM
**To:** Joshua VanNaarden <JVanNaarden@vscplaw.com>
**Cc:** Katelyn Mays <Katelyn.Mays@phila.gov>; Julia Ronnebaum <jronnebaum@VSCPLAW.Com>; Valerie Wilus <VWilus@vscplaw.com>
**Subject:** Outlaw v. City of Philadelphia et al.
**Importance:** High

Josh –

I apologize for sending this on a weekend.  In light of your disclosure and accompanying report of Dr. Rushing this week, we ask that your client undergo a similar independent medical examination by our expert.  Unfortunately, time is tight, but our expert has 3:45 pm this Friday available (8/23).  The

exam is expected to last a <u>maximum</u> of 3 to 4 hours.  Can you please confirm that this will work for Mr. Outlaw? If so, I will send a proposed stipulation to send to the Court.

Danielle

Danielle B. Rosenthal | Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102-1595
(215) 683-5448 (phone)
danielle.rosenthal@phila.gov
pronouns: she/her/hers
CAUTION: This email originated from outside of the VSCP LAW network. Do not click on any links, reply or open attachments unless the sender is known, and the content is verified as safe.
CAUTION: This email originated from outside of the VSCP LAW network. Do not click on any links, reply or open attachments unless the sender is known, and the content is verified as safe.
CAUTION: This email originated from outside of the VSCP LAW network. Do not click on any links, reply or open attachments unless the sender is known, and the content is verified as safe.
CAUTION: This email originated from outside of the VSCP LAW network. Do not click on any links, reply or open attachments unless the sender is known, and the content is verified as safe.
CAUTION: This email originated from outside of the VSCP LAW network. Do not click on any links, reply or open attachments unless the sender is known, and the content is verified as safe.

**EXHIBIT D**



**DIANA P. CORTES**
Philadelphia City Solicitor
(215) 683-5003
diana.cortes@phila.gov

**DANIELLE B. ROSENTHAL**
Deputy City Solicitor
Civil Rights Unit
(215) 683-5448
danielle.rosenthal@phila.gov

**KATELYN MAYS**
Assistant City Solicitor
Civil Rights Unit
(215) 683 5434
katelyn.mays@phila.gov

September 19, 2022

<u>**VIA ELECTRONIC MAIL**</u>
Joshua Van Naarden, Esq.
Julia Ronnebaum, Esq.
VSCP LAW, LLC
Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103

Re:   Donald Michael Outlaw v. City of Philadelphia et al.
      <u>2:21-cv-01290-CFK</u>

Dear Counsel:

We write with respect to your correspondence pertaining to expert disclosures and associated expert reports provided via email on September 13, 2022.  As we have discussed, we find ourselves in a position of needing to move for an extension of the rebuttal expert deadline and enlargement of the expert discovery period.  One contributing factor are issues with compliance with expert disclosure requirements.

<u>**Experts Without Accompanying Expert Reports**</u>

Although Federal Rule of Civil Procedure 25(a)(C)(2) allows for the disclosure of certain experts without a report, it still requires that the disclosing party set forth "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 25(a)(C)(2).  Your disclosures of Patricia Cummings and Marvin Toliver do not comply with this rule.  Rather than summarize the facts and opinions to which those witnesses will testify, your disclosure merely refers to fact witness deposition testimony.  This does not comply with disclosure requirements, as "reference

Joshua Van Naarden, Esq.
Julia Ronnebaum, Esq.
VSCP LAW, LLC
September 19, 2022

to other testimony, without providing the complete statement of opinions and basis therefor in a self-contained document is not only insufficient under Rule 26, but is unworkable." *Ingram v. Novartis Pharms. Corp.*, 282 F.R.D. 563, 565 (W.D. Okla. 2012), *order clarified on reconsideration* (June 29, 201).

Defendants should not be required to sift through hundreds of pages of deposition transcripts and divine the facts and opinions that will be the subject of expert testimony. *See, e.g.*, *Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. CV 14-3103 (SRN/FLN), 2016 WL 6920516, at *2 (D. Minn. Feb. 25, 2016) ("Indeed, the Court has found no authority to support the proposition that the mere citation to a witness's deposition testimony is a sufficient disclosure under Rule 26(a)(2)(C) when, at the time of the deposition, the witness had not been identified as an expert witness.").

## Experts with Accompanying Expert Reports

Federal Rule of Civil Procedure 26(a)(2)(B) requires that an expert's accompanying report include, among other things, both "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B).

The rule's reference to "facts and data considered" is broader than just those materials reviewed by an expert and ultimately relied upon. It instead includes "all information, whether privileged or not, that a testifying expert generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if the testifying expert ultimately rejects the information." *Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 464 (E.D. Pa. 2005). As part of this obligation, the disclosure must include all "information communicated" regardless of whether the information was "relied upon." *Kontonotas v. Hygrosol Pharm. Corp.*, No. CIV.A. 07-4989, 2009 WL 3719470, at *4 (E.D. Pa. Nov. 4, 2009).

In addition, the rule encompasses "anything received, reviewed, read, or authored by the expert, before or in connection with the forming of his opinion, if the subject matter relates to the facts or opinions expressed," *Euclid Chemical Co. v. Vector Corrosion Tech.*, No. 1:05CV80, 2007 WL 1560277, at *3 (N.D. Ohio May 29, 2007). Thus, "[t]he source of the information is irrelevant." *Vitalo v. Cabot Corp.*, 212 F.R.D. 472, 474 (E.D. Pa. 2002), and materials must be disclosed whether provided by counsel or obtained from another source.

Although some experts use Bates numbers to reference documents reviewed, many others use far too general descriptions that make it impossible for Defendants to reliably identify those documents. Just a handful of examples include "Responses to Request for Production of Documents" (Bunin Rep. appx. 1), "Website – Complaint spreadsheet" (Mosiniak Rep. appx.), "PPD Property Receipts" (Ross Rep. at 1), "Philadelphia Police Department Arrest Reports" (Rushing Rep. at 1), and "Photos" (Tota Rep. at 17). A more fulsome list of documents that require clarification is listed in Appendix A to this letter.

Joshua Van Naarden, Esq.
Julia Ronnebaum, Esq.
VSCP LAW, LLC
September 19, 2022

Additionally, in contravention of the disclosure obligations, several of Plaintiff's disclosed reports reveal that experts have considered materials not included on their lists of "reviewed materials."[1] Three non-exclusive examples are provided:

*Darrin Porscher*

Dr. Darrin K. Porscher states that he has "examined other homicide cases" and reviewed those cases' "court submissions and/or judicial findings, as well as evidentiary support such as notes of testimony, witness statements, and forensic reports." (Porscher Report at 41.) But these materials are not included on Dr. Porscher's list of "exhibits" that he has "reviewed" in connection with his report. (*Id.* at 3–13.) Nor does it appear that Dr. Porscher discloses the materials that he considered in discussing his "familiar[ity] with the tortured history of the Philadelphia Police Department" earlier in the report. (*Id.* at 37.)

*Alexandra Whittle*

Similarly, Ms. Alexandra B. Whittle (née Fensterer) discusses her consideration of a variety of extra-record "sources of data points." (Whittle Rep. at 5.). Yet, Ms. Whittle only includes a list of *case* material provided by counsel at the beginning of her report. (*Id.* at 6–7.) Even where certain materials (such as Pennsylvania Department of Corrections standards and DA DOC Policies) are referenced in report, these sources are not included in what is to be a comprehensive list of considered materials. Further, their descriptions are insufficiently specific for Defendants to identify them concretely, let alone obtain them. (*See, e.g.*, *id.* at 5, 18.)

*Michael Mosniak*

In a third example, you requested that we bring portions of original police files from the underlying investigation currently in City possession to your office on August 30, 2022, where Mr. Michael Mosniak looked through them. But nowhere in Mr. Mosniak's report does he disclose his consideration of those materials, which included a significant quantity of documents not included on the list of documents identified by Bates number in Appendix A of the report. (Mosniak Rep. appx.). This begs the question, what other materials have been considered but omitted as well?

*     *     *

Defendants should not be required to depose each and every expert – at considerable cost and in a highly truncated timeframe – to understand the bases for the experts' opinions and the materials that they considered and reference in forming them. Accordingly, we request that these deficiencies be rectified in short order.

---

[1] It is also not apparent to Defendants whether the experts' lists of "reviewed materials" include only those materials that they read and/or relied on or also includes all materials that were communicated to them, even if ultimately rejected.

Joshua Van Naarden, Esq.
Julia Ronnebaum, Esq.
VSCP LAW, LLC
September 19, 2022

Sincerely,

/s/ Danielle B. Rosenthal
Danielle B. Rosenthal
Deputy City Solicitor

/s/ Katelyn Mays
Katelyn Mays
Assistant City Solicitor


Encl.

APPENDIX A

**Bunin, Royal**
Responses to Requests for Production of Documents
Answers to Interrogatories – City of Philadelphia
Answers to Interrogatories – Peterman
Answers to Interrogatories – Piree
Supplemental Responses to Discovery (5/25/22)
Supplemental Responses to Discovery (6/23/22)

**Mosniak, Michael**
Website – About the Department
Website – Complaint spreadsheet

**Porscher, Frank**
Third Circuit EDPA Jury Instructions for 1983 Claims[2]

**Ross, Wayne**
City of Philadelphia Case Registration Summary
Office of Medical Examiner Records (please specify which documents)
Crime Scene Service Report
Autopsy Photographs (please specify which documents)
Incident Report – Derrick Alston – taken by Peterman (7/9/03)
Preliminary Hearing (10/29/2003) (potentially duplicative of listed hearing transcript)
Temple University Hospital Records (please specify which documents)
PPD Property Receipts
Scene Photographs (please specify which documents)
Google map photographs of the area
Outlaw PowerPoint Presentation[3]

**Dr. Susan Rushing, M.D.**
Letter by Cozen O'Conner legal team to District Attorney
Philadelphia Police Department Arrest Reports
Department of Corrections DC47C Report[4]
Juvenile Lifer Packet[5]
Memo by Leigh Ann Benson of Cozen O'Connor
Stratford Career Institute Official Transcript[6]
Medical Records from Dr. Bowden[7]

---

[2] Please specify the edition and which instructions were considered.
[3] Multiple PowerPoint presentations have been produced. Additional identifying information needed, as well as whether native or PDF version.
[4] We have located at least five different versions of this report, dated July 5, 2016, July 25, 2016, July 27, 2016, June 21, 2017, and June 21, 2018.
[5] We have located at least two different versions of this packet, dated July 6, 2018 and July 28, 2016.
[6] We have located at least two different official transcripts, dated March 24, 2017 and July 20, 2018.
[7] It is unclear to us which precise set of records is being referenced as there were multiple sets of records produced from different sources.

Prison Medical Records

**<u>Romy Tota, Ed.D., LCP, NCC</u>**
Plaintiffs Responses to Defendant's First Set of Requests for Production
Plaintiffs Responses to Defendant Peterman's Interrogatories[8]
Plaintiff's Responses to Defendant Piree's Interrogatories[9]
Plaintiff's Responses to Defendant City of Philadelphia's Interrogatories[10]
Records of Pennsylvania Department of Corrections
Records of Pennsylvania Department of Corrections – Integrated Correctional Plan[11]
Photos
Paystubs from Urban Affairs Coalition (please specify which)
Certificate of Licensure to Operate a Home Care Agency
Certificate of Completion
Marriage License
Certificate of Education
Email Correspondence regarding job with PAAN (more specificity needed)
Job Search Efforts (list documents)
Medical Records from Einstein Healthcare Network[12]
Medical Records from RXD Medication Services
Medical Records from John Bowden Jr., D.O.
Medical Records from OpenMRI
Reference Letters
Diplomas
Records of Juvenile Lifer information

---

[8] It is unclear whether this includes the supplemental responses.
[9] It is unclear whether this includes the supplemental responses.
[10] It is unclear whether this includes the supplemental responses.
[11] We have located at least three different plans, dated December 4, 2015, July 27, 2016, and June 21, 2018.
[12] With respect to the medical records that we have identified on this list, there have been multiple sets of such records produced, sometimes by multiple sources.  Therefore, additional clarification is needed as to the sets of records reviewed, either by date range or Bates number.

**EXHIBIT E**

| From: | Julia Ronnebaum |
|---|---|
| To: | Danielle Rosenthal; Joshua VanNaarden |
| Cc: | Katelyn Mays |
| Subject: | RE: Outlaw v. City of Philadelphia et al. |
| Date: | Monday, September 19, 2022 3:48:48 PM |

Thanks Danielle, as stated in a separate email chain, I have been tied up most of the day on various zoom calls with counsel in other cases, but we have received your correspondence and will respond shortly.

Thank you,

## Julia Huxman Ronnebaum, Esq.
### *Associate*

Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103
office 215.960.0000  direct 215.960.0388 fax 215.960.0384
jronnebaum@vscplaw.com
www.vscplaw.com
*\*\*\*While our lawyers and staff will be working from our physical office location, all communications and pleadings in cases should be sent via e-mail.*

This email is from the law firm VSCP LAW and may contain legally privileged or confidential information, and is intended only for the recipient identified above as the addressee. If you are not the addressee, or if this message has been sent to you in error, you are not authorized to read, copy, or distribute this message and any attachments, and you must delete this message and attachments and immediately notify the sender by return e-mail.  Delivery of this message and any attachments to any person other than the intended recipient(s) and is not intended in any way to waive confidentiality or any legal privilege. Nothing in this email should be construed as creating an attorney-client relationship or providing legal advice unless you are a current client of VSCP LAW.

**From:** Danielle Rosenthal <Danielle.Rosenthal@phila.gov>
**Sent:** Monday, September 19, 2022 10:41 AM
**To:** Joshua VanNaarden <JVanNaarden@vscplaw.com>; Julia Ronnebaum <jronnebaum@VSCPLAW.Com>
**Cc:** Katelyn Mays <Katelyn.Mays@phila.gov>
**Subject:** Outlaw v. City of Philadelphia et al.

Counsel:

Please see the attached correspondence.

Danielle

Danielle B. Rosenthal | Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102-1595
(215) 683-5448 (phone)
danielle.rosenthal@phila.gov

pronouns: she/her/hers

CAUTION: This email originated from outside of the VSCP LAW network. Do not click on any links, reply or open attachments unless the sender is known, and the content is verified as safe.

**EXHIBIT F**



CITY OF PHILADELPHIA

LAW DEPARTMENT
One Parkway
1515 Arch Street
Philadelphia, PA 19102-1595

**DIANA P. CORTES**
Philadelphia City Solicitor
(215) 683-5003
diana.cortes@phila.gov

**DANIELLE B. ROSENTHAL**
Deputy City Solicitor
Civil Rights Unit
(215) 683-5448
danielle.rosenthal@phila.gov

**KATELYN MAYS**
Assistant City Solicitor
Civil Rights Unit
(215) 683 5434
katelyn.mays@phila.gov

September 22, 2022

**<u>VIA ELECTRONIC MAIL</u>**
Joshua Van Naarden, Esq.
Julia Ronnebaum, Esq.
VSCP LAW, LLC
Two Commerce Square
2001 Market Street, Suite 3700
Philadelphia, PA 19103

Re:     Donald Michael Outlaw v. City of Philadelphia et al.
        2:21-cv-01290-CFK

Dear Counsel:

Thank you for your correspondence received just before 11:00 p.m. yesterday evening.  We are still reviewing the letter in full but want to assure you that the letter was certainly not a "delay tactic," and we spent considerable resources and worked as fast as possible – including on a weekend – to try to determine deficiencies in the reports to get them corrected as soon as possible, and in particular match up listed documents with those produced with Bates labeling.  This is evident from our last letter, where we even went so far as to note the various dated versions of documents that we were able to find in searching for documents cited to collect them for our files.

As far as the issue of timing, we did the best that we could to review over 400 pages of reports – along with other responsibilities in this case and others – and provide you a list of perceived deficiencies as soon as was humanly possible.  I understand that we were unable to send the formal correspondence until Monday, despite working all weekend, but I did preview the issue during a meet-and-confer with Mr. Van Naardan on Friday, September 16, 2022.  As you know, we also felt that we could not have waited any longer on the motion for an extension (indeed, our target

Joshua Van Naarden, Esq.
Julia Ronnebaum, Esq.
VSCP LAW, LLC
September 22, 2022

filing date as you know was last Friday), as we are already in the difficult position of receiving a ruling only a few days prior to when the first deadline come due (with a religious holiday in between). The gross underestimation on Plaintiff's part as to the number of disclosed experts has unfortunately made the schedule oppressive and unfeasible, causing a time crunch for all. We don't agree that we were unprepared to move into the expert phase of discovery, albeit just on the heels of fact discovery that closed literally days prior. We had retained an expert in the subject matter that you identified during the Rule 16 and began the document review process. As numerous courts and cases make clear, it is impossible to predict exactly what will need to rebut until confronted with the reports. In this case, the surprise was heightened when we received – with zero advance warning – 5 to 10 times the number of estimated experts/reports, and virtually no time for review and discovery prior to the need to disclose rebuttal reports/designations.

Further, as far as your note about requesting documents via subpoena, we do intend to do so – and have already begun to issue them for certain witnesses. More are on the way – we have finite resources and simply cannot do everything at once that needs to be done on this case. Getting these deficiencies rectified, going through numerous rounds of email and phone discussion to come to an agreed stipulation on an independent medical examination, the Motion practice before the Court, and the scheduled depositions for the next two days were high priorities. We remain hopeful that the Court will grant some breathing room given the prejudice to Defendants caused by the lack of fully complete timely disclosures and compressed time scheduled.

<u>Disclosure of Non-Retained Expert Witnesses</u>

We stand by our statements regarding the deficiencies in your disclosures, where you referenced the prior deposition testimony of Ms. Cummings and Mr. Toliver rather than complied with the Rule's language. *Ingram* does state that, for testifying experts without reports, "[t]he disclosure must also state a summary of the facts and opinions to which the witness is expected to testify. Again, mere reference to unspecified testimony is insufficient under this standard." *Ingram v. Novartis Pharms. Corp.*, 282 F.R.D. 563, 565 (W.D. Okla. 2012), order clarified on reconsideration (June 29, 2012).

Regardless, ample other case law supports the same proposition. *Diawara v. United States*, No. CV 18-3520, 2020 WL 6262983, at *7 (E.D. Pa. Oct. 23, 2020) ("The Court agrees that Plaintiffs' 'summary' was insufficient to give proper notice under Rule 26. Multiple courts have held that summaries that merely reference a set of produced documents or the witness's prior deposition testimony do not comply with Rule 26."); *Cooper v. Meritor, Inc.*, No. 4:16-CV-52-DMB-JMV, 2018 WL 1513006, at *3 (N.D. Miss. Mar. 27, 2018) ("Nor may a party refer to other documents, even deposition testimony, as a substitute for the summary required by Rule 26."); *Nicastle v. Adams Cnty. Sheriff's Off.*, No. 10-CV-00816-REB-KMT, 2011 WL 1655547, at *3 (D. Colo. Apr. 29, 2011) ("Rule 26(a)(2)(C) requires specificity much greater than that provided in the plaintiff's designations and the deposition transcript of a day long deposition.").

Joshua Van Naarden, Esq.
Julia Ronnebaum, Esq.
VSCP LAW, LLC
September 22, 2022

We are considering your newly crafted disclosures of Ms. Cummings and Mr. Toliver's testimony, which we just received (five days in advance of the supplemental disclosure deadline) and will follow-up with any perceived issues or questions as soon as we are able.

Disclosure of Retained Expert Witnesses

We may be missing something, but do not believe your response as to it relates to Darrin Porcher satisfies the concern. We do not disagree that Dr. Porcher does state that he reference documents associated with homicide cases, but he does not concretely identify these materials he considered in connection with those homicides. Merely referring to particular other homicide cases, for instance, is insufficient to tell us *what* particular documents from those cases or other facts/information he was privy to – either because he obtained them himself or they were communicated from someone else. We thus believe this deficiency has not been corrected.

Thank you for providing this additional information for Ms. Whittle. Is it inclusive of all materials considered? We are particularly concerned about the lack of listing or producing of items such as DOC Policies, which clearly contain factual elements and thus must be part of affirmative expert disclosures. Finally, to address your comment that Ms. Whittle would not have received certain materials from Plaintiff's counsel, as we hoped to convey in our prior letter, this is wholly irrelevant to the analysis. *See, e.g., Vitalo v. Cabot Corp.*, 212 F.R.D. 472, 474 (E.D. Pa. 2002) ("The only requirement of Rule 26(a)(2)(B) is that the expert "consider[ ]" the information. The source of the information is irrelevant. It is also irrelevant whether or not the expert ultimately relies on the information in forming his or her opinion." (alteration in original)).

With respect to Michael Mosiniak, we may have a misunderstanding. It was our understanding that what is contained within CITY000001–669 is not necessarily reflective of the files that you reviewed in hard copy. Without doing a document-for-document compare, the envelopes separating and categorizing the documents are for instance one item missing. I also understand that he refers in the body of the report to reviewing what remained of police files – and apologies for easily missing that in our rush to review over 400 pages of reports quickly and provide comments. That said, we respectfully request that the "materials considered" be all grouped into a single list. We ask exactly for precisely this reason – to remove ambiguity and room for error and to make the list clear and easy for all parties to find and reference.

Finally, as our letter noted that we were simply providing examples, and you only addressed the examples we noted, we will need to go back to determine whether other reports not discussed raise the same or similar issues.

Documents Discussed in Exhibit A

We feel compelled to address your assertion that we were improperly acting for purposes of delay in taking the time and resources – and thus, diverting that time and resources from other projects and tasks on the matter – to compile a list of materials for which we needed clarification. The contents of your letter clarifying our confusion bears out the fact that clarification was necessary

Joshua Van Naarden, Esq.
Julia Ronnebaum, Esq.
VSCP LAW, LLC
September 22, 2022

due to unacceptable vagueness and ambiguity in the original disclosures. Without spending too much additional time rehashing the issue, the just a few examples are illustrative:

- While it may have been apparent to you that the PPD Property Receipts referenced by Dr. Ross consisted of OUTLAWDAO2022000436-446, there have been *ample* other PPD Property Receipts produced in this litigation.

- Again, perhaps it seemed obvious that the PowerPoint Presentation considered by Dr. Ross pertains to OUTLAWDAO2022003186-3205, but from Defendants' perspective, there were numerous *different* presentations produced that matched this description.  (*See, e.g.*, PLAINTIFF12946–53; PLAINTIFF12812–19; PLAINTIFF12894–904; etc.)

- Beyond the discrete set of "Records of the Pennsylvania Department of Corrections" that you clarify Dr. Tota reviewed, there were *hundreds* if not *thousands* of pages of other records that met this exact description that have been produced in this litigation. We had know way of knowing whether Dr. Tota reviewed all of these or a discrete set (such as you list).

- It was far from self-explanatory that the medical records referenced in numerous experts' reports pertained to same Bates ranges that you now helpfully provide.  For instance, it is helpful to understand that the Bates range of Dr. Bowen records considered by Dr. Susan Rushing and Romy Tota spans from PLAINTIFF19979–20096.  As we noted in our initial letter, there are a number of different sets of Dr. Bowen records in the productions, including a separate 176 page set of records that we received from Dr. Bowen pursuant to subpoena and produced at Bates CITY024115–290.  These records do *not completely overlap* with those in your cited Bates range.  Further, absent your clarification, we would had had no way of knowing that the documents referenced as Dr. Bowen's records include some (but not all) of Occupational Therapy & Rehabilitation Services, P.C., where Dr. Bowen was the not the treating but referring provider. (*See, e.g.*, PLAINTIFF20085–95.)

- It is apparent that a number of documents that were listed in reports in singular form (e.g., "Certificate of Completion," "Marriage License," "Certificate of Education," "Stratford Career Institute Official Transcript," in fact refer to multiple different documents, which Defendants would not have naturally assumed this to be the case absent your clarification.

- We could not have known that the Department of Corrections DC47C Report considered by Dr. Rushing referred to the document at Bates OUTLAWDAO2022008256–58 (dated June 21, 2018).  This is because, as noted in our letter, there are multiple different versions of this document that have been produced.  (*See, e.g.*, July 27, 2016 version at OUTLAWDAO2022006378–80; July 25, 2015 version at OUTLAWDAO2022008041–42).  We therefore appreciate – and were entitled to – that clarification.

Again, we will not belabor the point with every single example but can assure you the letter was written in good faith: As we tried to describe in the letter, it became evident to us in pulling the

Joshua Van Naarden, Esq.
Julia Ronnebaum, Esq.
VSCP LAW, LLC
September 22, 2022

materials that quite a number referred to multiple sets of produced documents, leaving us guessing which document(s) was intended.  In other cases, despite our best efforts, we were unable to find the produced document at all using your description, which is why we sought clarification.  We too have no interest in needlessly expending resources that have taken away from completing expert discovery, retaining rebuttal experts, and other competing case load and commitments.  With that in mind, we will take a closer look at your letter to see if there are still areas of ambiguity and confusion to clear up with you.

*     *     *

Finally, we appreciate your letter and efforts to rectify some deficiencies – albeit more than a week into a two-week period for affirmative expert discovery.  That said, we still though strongly maintain that Defendants are severely prejudiced by only receiving this critical information that should have been included in the initial reports per Rule 26(a)'s disclosure requirements, a *mere* six days prior to the supplemental disclosure deadline (two of which include the holiday of Rosh Hashanah). As discussed, we also disagree that all deficiencies in our letter have been corrected. Please reach out with any questions or concerns.

Sincerely,


*/s/ Danielle B. Rosenthal*
Danielle B. Rosenthal
Deputy City Solicitor

*/s/ Katelyn Mays*
Katelyn Mays
Assistant City Solicitor

**EXHIBIT G**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA


Donald Michael Outlaw    :
            Plaintiff    :
                         :
      vs.                : Civil Action
                         : No. 21-1290
City of Philadelphia     :
et al.                   :
            Defendant    :


              - - -
        Tuesday, July 26, 2022
              - - -

        Videotaped deposition of DONALD

OUTLAW, taken pursuant to notice, at the

offices of the Philadelphia Law Department,

1515 Arch Street, Philadelphia, Pennsylvania,

before Michele L. Murphy, a Registered

Professional Reporter and Notary Public, on

the above date, beginning at approximately

10:45 a.m.

              - - -

Page 47

1  conversation me and her had, but when it came
2  time for my W-2 form, I told her, you know, I
3  was waiting on it from the mail, that she had
4  to check for it in the mail, but...
5      Q.   Go to the first page of the tax
6  return.  Do you see that the address listed,
7  91 North York Road, Willow Grove?
8      A.   Yes, I see that.
9      Q.   Is that an address that you've lived
10 at?
11     A.   That's an address that is an
12 apartment that I frequent, but I didn't a
13 hundred percent live there.
14     Q.   What do you mean it's an apartment
15 that you frequent?
16     A.   It's an apartment that I frequent,
17 that I had, and I will go back and forth from
18 my house to there.
19     Q.   During what time period?
20     A.   I had the apartment for about a
21 little over a year.
22     Q.   From when to when?
23     A.   I can't give you that.  I don't
24 know.

Page 48

1      Q.   Well, when did you last have it?
2      A.   I think -- what year is this?
3      Q.   2022.
4      A.   So probably like March of '22,
5  somewhere around there.
6      Q.   Okay.  And --
7      A.   But I wasn't living there.  I live
8  with Monique at 241 Cambridge Road.
9      Q.   And you said it's an apartment that
10 you frequent.  Do you pay rent for the
11 apartment?
12     A.   I no longer have the apartment.
13     Q.   When you had the apartment, did you
14 pay rent or did you own the apartment?
15     A.   I paid rent.
16     Q.   Who did you pay rent to?
17     A.   Whatever company it was.
18     Q.   So you had a lease for the
19 apartment?
20     A.   Yes.
21     Q.   And was there any other individuals
22 who were living with you there or frequenting
23 the apartment with you there?
24     A.   Yes.

Page 49

1      Q.   Who was that?
2      A.   A girl named Zakia.
3      Q.   Last name?
4      A.   I don't know Zakia's last name
5  offhand.
6      Q.   Were you at any point married to
7  Zakia?
8      A.   Legally, no.
9      Q.   What about non-legally?
10          MR. VAN NAARDEN:  Objection.
11          I'll let you answer.
12 BY MS. ROSENTHAL:
13     Q.   Did you consider her to be your
14 wife?
15     A.   I'm not sure if you have any
16 knowledge of the Islamic faith, but legally in
17 Pennsylvania I am married to Monique and only
18 Monique.  Me and Zakia had a relationship, and
19 at one point we had a religious ceremony
20 Islamically, and I guess you would consider it
21 like religiously married.
22     Q.   Did you have a child with her?
23     A.   Yes, I did.
24     Q.   So you religiously married this

Page 50

1  woman, had a child with her, but you don't
2  know her last name; is that your testimony?
3      A.   I mean, offhand like, yeah, that's
4  my testimony, but like I don't just run around
5  just knowing everybody's last name, her last
6  name or something.
7      Q.   Well, it doesn't sound like she's
8  everybody.  It sounds like she's the mother of
9  your child.
10     A.   Yeah, exactly.
11     Q.   Do you know why Monique would put
12 this other address on your tax return?
13     A.   You would have to ask Monique that.
14 You're asking me why Monique made decisions.
15 I can't tell you why Monique did anything.
16     Q.   I want to turn your attention to the
17 last page of the document.  Do you see that --
18          MR. VAN NAARDEN:  What Bate
19     number is it?
20          MS. ROSENTHAL:  PLAINTIFF00611.
21          MR. VAN NAARDEN:  Okay.
22 BY MS. ROSENTHAL:
23     Q.   Do you see how at the top it says,
24 "Complete Part III for each student for whom

Page 51

1 you're claiming either the American
2 opportunity credit or lifetime learning
3 credit," and then there's some information
4 filled out under Student and Educational
5 Institution Information?  Do you see that on
6 the last page?
7      A.   On this page?
8      Q.   Yep.
9      A.   Right here?
10      Q.   Yep.
11      A.   You're talking about line where it
12 says 22?
13      Q.   Do you see that this page appears to
14 contain information for individuals who are
15 claiming a tax credit as a result of being a
16 student at an educational institution?
17      A.   Yes.  I see that on here.
18      Q.   Do you see that Delaware County
19 Community College is listed as the name of the
20 educational institution that Donald Outlaw is
21 attending?
22      A.   Yes, I see that.
23      Q.   Have you attended Delaware County
24 Community College?

Page 52

1      A.   Me and Monique had conversations
2 about me going back to school going to
3 Delaware County.  I actually spoke with
4 somebody about it, but I didn't fully pursue
5 it all the way.
6      Q.   So you never enrolled in Delaware
7 County Community College?
8      A.   No, I did not.
9      Q.   But did you have any knowledge that
10 Monique was claiming a tax credit for you
11 having enrolled in Community College?
12      A.   You would have to ask Monique about
13 anything on this paper.  I just gave Monique
14 permission to file it.  So Monique could have
15 been under the impression I enrolled or
16 whatever the case may be, but --
17      Q.   I would like --
18      A.   -- but you're asking me about a
19 document that I did not prepare, and I can't
20 really give you the information that you're
21 looking for, because I didn't prepare this
22 document.  So I apologize.  I'm trying to
23 answer the questions to the best of my
24 ability, but I didn't prepare the document.

Page 53

1 I'm sorry.
2      Q.   Mr. Outlaw, if you could just listen
3 carefully to my questions, I think it would go
4 smoother.  My question is, did you have any
5 knowledge that Monique was claiming a tax
6 credit for you having attended or that you
7 were attending Delaware County Community
8 College?
9      A.   I'm sorry.  What's your name?
10      Q.   My name?
11      A.   Yes.
12      Q.   Danielle Rosenthal.
13      A.   I'm sorry, Danielle.  I'm answering
14 the questions to the best of my ability.  I'm
15 not sure exactly what you're looking for, but
16 I didn't prepare the document.  I don't know
17 what you want me to say.  I'm sorry.  But I
18 don't know.
19      Q.   My question is, did you have
20 knowledge of her having filled out the form
21 this way and claiming a tax credit for you?
22 My question is not what her intent was or what
23 knowledge she had.
24      A.   I didn't know exactly a hundred

Page 54

1 percent what she put on this form.  All I know
2 is Monique is my wife.  She does a lot of
3 my -- a lot of things for me.  She sends my
4 e-mails.  She washes my clothes.  She prepares
5 my meals.  She -- I rely on Monique for a lot
6 of things, and I relied on Monique to file my
7 taxes, and I didn't second guess, you know,
8 her filing my taxes.
9      I didn't -- no, we didn't go through
10 this and, you know, we didn't go over it with
11 everything she put on there.  So I can't
12 answer the question the way you want me to.
13 I'm sorry.
14      Q.   Before today are you aware that a
15 tax credit was -- an educational tax credit
16 was claimed for you in 2021 on your tax
17 returns?
18      A.   I'm sorry.  I gave the best answer I
19 can give you.  Before today I knew Monique
20 filed my taxes for me.  I knew before this
21 that Monique made some mistakes, got with a
22 tax expert, and we have an expert amending our
23 taxes right now as we speak.
24      MR. VAN NAARDEN:  Danielle, I

Page 267

1 know.  It wasn't that much.

2     Q.   Well, I don't know what not that

3 much means to you, so --

4     A.   A few thousand.

5     Q.   A few thousand.  What about the year

6 before?

7     A.   I can't say.

8     Q.   A few thousand as well?

9     A.   The year before Deandre was mainly,

10 you know, in control of it, so I don't know.

11    Q.   But you're a member of the LLC,

12 aren't you?

13    A.   Yes, I am.  But it's my family.  I

14 trust him.

15    Q.   Well, it was your name on the PPP

16 loan, right?

17    A.   Yeah.  I never said it wasn't.

18    Q.   So you asked for $20,000 for a

19 business that was making a couple thousand a

20 year?

21    A.   The business was generating money,

22 but as far as exactly what I asked for, how I

23 asked for it, I didn't fill out the

24 application to tell you exactly what I put,

Page 268

1 how I put it on there.  I had help with

2 filling out the application.  So I don't know

3 exactly what they put on the application.

4     Q.   And I assume that you don't know

5 whether the income that you received from

6 Outlaw Demolition and Restoration was

7 reflected on your tax returns since you didn't

8 fill them out and didn't see them before they

9 were filed?

10    A.   No, but me and Monique had a

11 conversation and she end up amending the taxes

12 because she saw some type of flaw or whatever.

13 She's trying to make it right, whatever was

14 wrong.

15    Q.   Have they already been resubmitted?

16    A.   Yeah.  As soon as we get it out,

17 we'll send it over to you.

18    Q.   Have they been submitted to the

19 federal --

20    A.   I mean, I don't -- I'm not --

21    Q.   Are you amending your state taxes as

22 well?

23    A.   I don't know too much about that.  I

24 rely on my wife to do that.  So whenever that

Page 269

1 happens, I will be sure to send it to Josh.

2     Q.   Are the two tax returns we showed

3 you, are those the only two tax returns you

4 filed in your life?

5     A.   I don't know.

6     Q.   You didn't file any in prison,

7 right?

8     A.   No.  I was in jail.  How can I file

9 it in prison?

10    Q.   Well, I won't give you legal advice

11 on that, but there is an obligation if you

12 make certain amounts of money to file tax

13 returns.  I don't know how much you made,

14 but...

15         What about the other LLC?  Do you

16 have a connection to Outlaw Tender Touch?

17    A.   Monique runs that.  I don't have --

18 I can't give you anything on that.  I don't

19 know.

20    Q.   Do you have any -- I'm just checking

21 the time.

22         Do you have any affiliation at all

23 with them?

24    A.   I do a little word of mouth

Page 270

1 marketing, but besides that, not really.

2     Q.   Well, do you have any either as a

3 member or manager or employee, anything other

4 than just it -- you know, providing some help

5 as a family member?

6     A.   No.  I don't do nothing.  I let

7 Monique run it.

8     Q.   Do you know why documents related to

9 Outlaw Tender Touch were produced in response

10 to a request for production about your income?

11    A.   Because me and Monique are married

12 and we have a joint income.  I told you, my

13 whole paycheck goes to Monique.  We consider

14 our income as one.

15    Q.   Okay.  We didn't receive any

16 documents related to her paralegal employment,

17 though.

18    A.   I'm sorry to hear that, but

19 whatever --

20    Q.   You consider that your income?

21    A.   No.  I don't get none of Monique's

22 money.  Monique takes my money.  What's mine

23 is hers.  What's hers is hers.

24    Q.   Do you have an understanding when

Page 271

1  you're filing the revised tax return whether
2  they're going to be filed as jointly?
3       A.    I'm not sure how it's going to go,
4  but whenever it's done, I will give it to Josh
5  and he will hand over everything he needs to
6  hand over to you for --
7       Q.    Do you have an idea of how long it
8  will be?
9       A.    A couple weeks.
10      Q.    Did you file a tax return in 2020?
11 No.  Sorry.  Strike that.
12           MS. ROSENTHAL:  I think we have
13      to break now, because I have to go, and
14      then I guess we'll come back at -- I will
15      rush her home and bring -- unless you
16      want a puppy barking, and then come by --
17      I will take -- I hope I'll be back by
18      6:10.  I'll do my very, very best.
19           MR. VAN NAARDEN:  Okay.
20           VIDEO TECHNICIAN:  We're now
21      going off record.  The time now is 5:40
22      p.m.
23                  - - -
24           (Recess.)

Page 272

1           (Ms. Mays left the conference
2      room.)
3                  - - -
4           VIDEO TECHNICIAN:  We're now
5      back on record.  The time is 6:49 p.m.
6  BY MS. ROSENTHAL:
7       Q.    We're back on the record.
8           How would you describe your
9  relationship with Christopher Holder right now
10 in more detail than he's a friend, if he is
11 one?
12      A.    Christopher Holder, he's currently
13 incarcerated.  If I could do anything, like
14 there's been times where I got my wife to send
15 him money on his books, like if he's doing
16 Ramadan or anything like that due to, you
17 know, me being incarcerated and so forth and
18 so on and, you know, me considering him to be
19 a friend, I have sent him money.
20           I don't really -- I rarely talk to
21 him, but I consider him still to be a friend,
22 but he's serving time.
23      Q.    And what would you say is about the
24 total amount of money that you've sent him?

Page 273

1       A.    I can't give an accurate amount.
2  Maybe a few hundred bucks, a couple hundred.
3  Three, four hundred.
4       Q.    Is that a lot of money for you and
5  your household given your income?
6       A.    It depends.  Sometimes it is;
7  sometimes it's not.
8       Q.    And is it your practice to give that
9  amount of money to any of your friends who are
10 incarcerated?
11      A.    Yes.  Any of my friends that have
12 reached out to me that's in need, if I can
13 help them out, I try my best to help them out.
14           It's -- you know, I got the
15 mentality of I understand exactly what it's
16 like to be in jail.  I understand that
17 sometimes a person might need to call Imam,
18 and it's not free to make a phone call.
19 Sometimes a person might not like the meal
20 that they serving and they might want to get
21 something to eat, so -- and there's other
22 things in jail where you need money for.  You
23 need money to put music on your tablet.
24           You know, throughout my

Page 274

1  incarceration, like, you know, certain songs,
2  you know, helped me get through the night.
3           So I got a mentality of that if I
4  could do anything to help him out, if I got
5  it, like I will send my money if I can,
6  because I can directly relate to what they
7  going through, especially the guys that I feel
8  as though are actually innocent.  But, you
9  know, whether they innocent or not is
10 irrelevant.  I think I know exactly what they
11 going through.  I got empathy for them, and if
12 I consider them a friend, I know how much it
13 means to them to send $50 or $100.
14      Q.    I'm going to -- I've given you the
15 chance to elaborate, but I'm going to cut you
16 off at this point, because my question was
17 much more limited about describing your
18 relationship.
19           MR. VAN NAARDEN:  Note my
20      objection.  You said -- you asked him
21      specifically if he's more than a friend,
22      to elaborate.  That was your initial
23      question.
24           MS. ROSENTHAL:  Yes, but now --